**In re SUNRISE SECURITIES LITIGATION.**

**This Document Relates to: All Actions.**

**MDL No. 655.**

United States District Court,
E.D. Pennsylvania.

May 31, 1989.

On Motion for Partial
Reconsideration Nov. 17, 1989.

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., Squire, Sanders & Dempsey, Washington, D.C., for plaintiffs.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

This multidistrict litigation arises out of the insolvency of Sunrise Savings and Loan Association ("Sunrise"). Three groups of claims have been consolidated for pretrial proceedings in this district: state common law and Securities Exchange Act of 1934 claims asserted by Sunrise shareholders (the "Securities case"); fiduciary duty claims asserted by the Federal Savings and Loan Insurance Corporation ("FSLIC") in its corporate capacity (the "Fiduciary Duty case"); and state common law and civil RICO claims asserted by former Sunrise depositors (the "Depositors case").[1] Among the defendants in this litigation are former officers and directors of Sunrise, as well as the law firm which served as Sunrise's general counsel, and the accounting firm which served as Sunrise's outside auditor.

Presently before this Court are a number of motions to compel discovery relating to first phase document production.[2] In this memorandum, I decide most of the legal issues presented by the outstanding discovery motions, and refer to the Special Master those issues which will require examination of individual documents or further factfinding. *See In re Sunrise Securities Litigation,* 124 F.R.D. 99 (E.D.Pa. 1989) (stating the reasons for appointment of a Special Master in this litigation).

### I. *Blank Rome, Foxman, Treadwell and Gitomer—Work Product Documents*

Blank Rome, Michael D. Foxman, Kenneth A. Treadwell and M. Kalman Gitomer[3] have claimed work product protection

1. A motion for certification of a plaintiff class of depositors is currently outstanding. Decision of this motion has been deferred pending additional submissions by the parties. *See* Memorandum and Order, C.A. 88–1713, April 17, 1989 (E.D.Pa.).

2. Decision of these motions had been deferred pending review by the parties to this litigation of four Sealed Orders issued by the Supervisory Court for a Florida grand jury conducting an

investigation related to Sunrise. Blank Rome, Comiskey and McCauley ("Blank Rome") had sought to submit these Orders to this Court for review relating to the outstanding discovery motions.

3. Foxman has turned over all work product materials in his possession to Blank Rome, and joins in its contentions regarding work product protection. Response of Foxman to Amended Motion of Certain Defendants, at 1; Answer of

for a multitude of documents sought by the outside directors of Sunrise,[4] Deloitte Haskins & Sells ("DHS"), FSLIC, Caldwell C. Robinson, Frederic Gruher, Kenneth R. Howard, Laddie D. Howard, J. Randolph Black, and Curtis Walker.[5] Blank Rome turned over two-thirds of these work product documents to FSLIC pursuant to an agreement that FSLIC would "not place the documents in the plaintiffs' Sunrise document depository, or allow any third party to inspect, review or use the documents in any manner whatsoever, absent a court order."[6] Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit B. The moving parties argue that by giving these documents to FSLIC Blank Rome has waived any claims it may have that they are protected work product.[7] They also contend that work product pro-

tection is not applicable because Blank Rome is a defendant in this litigation, and its legal advice to Sunrise is directly at issue.[8]

F.R.C.P.Rule 26(b)(3) codifies the doctrine of work product protection set forth in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), for documents and tangible things "prepared in anticipation of litigation" by or for a party or a party's representative.[9] The *Hickman* Court formulated the work product doctrine to protect "the public policy underlying the orderly prosecution and defense of legal claims," stating that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." 329 U.S. at 510, 67 S.Ct. at 393. The public

Foxman to Motion to Compel Production of FSLIC, at 1–2. Treadwell and Gitomer also have withheld from FSLIC as attorney work product both internal Blank Rome documents and documents they created or "amassed" during representation of Sunrise. Treadwell's Memorandum in Opposition to Motion to Compel, at 2; Memorandum in Support of Gitomer's Objection to FSLIC's Motion, at 3–10. To the extent they join Blank Rome's contentions regarding the work product documents, Foxman, Treadwell, and Gitomer are included in this Section's references to "Blank Rome."

4. The outside directors of Sunrise included Alan B. Keiser, Nathaniel J. Jacobs, Robert Logsdon, Robert T. Siemon, George Greenberg, Lake Lytal and Bernard Simonson.

5. The same parties also have moved to compel production by Blank Rome of documents withheld under the attorney client privilege, the joint defense privilege, the grand jury privilege, or as irrelevant, with the following exceptions: Kenneth Howard seeks production of only those work product documents relating to the Monte Carlo Beach Club loan; Gruher seeks only those documents pertaining to the Cambridge Towers, Mutiny, Litico, Canrael Properties' and Corona loans; and Black, Laddie Howard and Walker seek only those documents turned over to FSLIC. In Sections I through V of this Memorandum, these parties are referred to as the "moving parties."

6. Treadwell also turned over to FSLIC documents he created or amassed during the course of his representation of Sunrise subject to an agreement imposing restrictions similar to those imposed by the FSLIC/Blank Rome agreement. This Section's discussion of Blank Rome's waiver of work product protection by production to

FSLIC therefore applies with equal force to the documents given by Treadwell to FSLIC.

7. All defendants except the Blank Rome defendants also have filed motions to compel FSLIC to produce the work product documents received from Blank Rome. *See* Defendants' Reply Brief in Support of their Motions to Compel from FSLIC, FHLB–A et al., at 1, n. 1. The disposition of the waiver issue *infra* makes it unnecessary to address production of the work product documents by FSLIC. *See infra*, at n. 17.

8. Blank Rome has submitted to this Court four Orders of the Florida Court which supervised a grand jury investigation relating to Sunrise. These Orders relate to privilege claims by Blank Rome, but I do not find them relevant to the privilege issues before this Court.

9. Rule 26(b)(3) provides, in relevant part: "a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for *another party or by or for that other party's* representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

policy supporting the work product doctrine "is not to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process." *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 150–151 (D.Del. 1977).

"The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1974). The Court of Appeals for the District of Columbia Circuit has identified three factors as important in determining whether there has been a waiver of work product protection: (1) did the party claiming the privilege "seek[ ] to use it in a way that is not consistent with the purpose of the privilege"; (2) did the party have any "reasonable basis for believing that the disclosed materials would be kept confidential"; and (3) would waiver of the privilege under the circumstances of the case "trench on any policy elements now inherent in th[e] privilege?" *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372 (D.C.Cir.1984).

Regarding the first factor, the general rule is that "[d]isclosure to an adversary waives the work product protection as to items actually disclosed." *Grumman Aerospace Corp. v. Titanium Metals Corp.,* 91 F.R.D. 84, 90 (E.D.N.Y.1981). As the Court of Appeals for the District of Columbia Circuit stated, "the health of the adversary system—which spawned the need for protection of an attorney's work product from discovery by an opponent— would not be well served by allowing [parties] the advantages of selective disclosure to particular adversaries, a differential disclosure often spurred by considerations of self-interest." *In re Subpoenas Duces Tecum,* 738 F.2d at 1372. By the same token, "[d]isclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver." *In re Doe,* 662 F.2d 1073, 1081 (4th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

▪ The question here, then, is whether Blank Rome disclosed the documents to an adversary. The moving parties contend that FSLIC is an adversary of Blank Rome. Blank Rome argues that it gave the documents to FSLIC Receiver, which is not its adversary in this action,[10] and not to FSLIC Corporate, plaintiff in the Fiduciary Duty case. According to the agreement under which Blank Rome handed over the documents, they were sought by "FSLIC, as successor in interest to Sunrise Savings & Loan Association, Blank, Rome's former client." Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit B.[11] Blank Rome claims that FSLIC identified "FSLIC as successor in interest to Sunrise" as FSLIC Receiver in its Motion to Compel Documents by Blank Rome.[12] FSLIC contends that "FSLIC as successor in interest to Sunrise" was FSLIC Corporate, since all rights against Blank Rome "previously held by FSLIC–Receiver have been assigned to FSLIC–Corporate." FSLIC's Reply to Blank Rome's Response to FSLIC's Motion to Compel, at 2.

But Blank Rome and FSLIC did not distinguish between FSLIC Corporate and

---

**10.** FSLIC Receiver is not a party to the Fiduciary Duty case or the Depositors case. FSLIC Receiver is a co-defendant of Blank Rome in the Securities Case, but has not filed any cross-claims against Blank Rome in that case.

**11.** *See also* Memorandum in Support of Certain Defendants' Amended Motion to Compel Against Blank Rome and Foxman, Exhibit E (letter to all counsel informing them that "Counsel for FSLIC, in its capacity as successor in interest to Sunrise Savings & Loan Association of Florida, has received virtually all of the documents listed as 'attorney work product.'")

**12.** Blank Rome states that in its Motion, FSLIC referred to the entity that had waived the attorney-client privilege on Sunrise's behalf as "FSLIC, as successor in interest to Blank, Rome's former client, Sunrise." According to Blank Rome, this waiver occurred "in a document filed by the Receiver six months after the assignment to FSLIC Corporate of the right to sue the attorneys." Response of Blank Rome to Certain Defendants' Amended Motion, at 7.

FSLIC Receiver when the documents were transferred. The FSLIC/Blank Rome agreement does not refer to "FSLIC Receiver" or "FSLIC Corporate" at all, much less provide that the disclosure of work product was limited to FSLIC Receiver alone, or even to FSLIC only as successor in interest to Sunrise.[13] Moreover, throughout this litigation, FSLIC Receiver and FSLIC Corporate, although recognized as legally separate entities, have been represented by the same attorneys and law firm. Disclosure to FSLIC Receiver's counsel therefore is the equivalent of disclosure to FSLIC Corporate's counsel, absent some agreement specifically providing otherwise. There is no such provision in the FSLIC/Blank Rome agreement.[14] Therefore, in turning over the documents to counsel for FSLIC "as successor in interest to Sunrise," Blank Rome should have anticipated that they would be reviewed by counsel for its adversary FSLIC Corporate as well as by counsel for FSLIC Receiver.

Blank Rome also contends that the FSLIC/Blank Rome agreement provides a "reasonable basis for believing that the disclosed materials would be kept confidential." As noted above, the agreement prevents FSLIC from giving third parties access to the documents without a Court Order, and also prevents FSLIC from revealing the documents' contents in court submissions.[15]

Despite these limitations, the agreement nevertheless anticipates disclosure of the documents to counsel for FSLIC Corporate, Blank Rome's adversary in the Fiduciary Duty case. The agreement forecloses only those uses of the documents by FSLIC Corporate which might reveal the contents of the documents to other parties. For example, it did not prevent FSLIC Corporate or its counsel from using the documents to formulate discovery and litigation strategies. See In re Sunrise Securities Litigation, 698 F.Supp. at 1260, n. 9 (noting, in discussing proposed settlement between Blank Rome, FSLIC and shareholder plaintiffs, that "[b]y virtue of its position in relation to Sunrise, the FSLIC has had access to much information unavailable to the non-settling defendants. As a result, the FSLIC currently is better able to assess the fairness of the settlement than the non-settling parties.") Permitting an adversary to use documents even for the limited purpose of formulating settlement strategies is inconsistent with the work product doctrine's purpose of pro-

**13.** In the future, the parties (particularly FSLIC) are asked to avoid using ambiguous expressions like "FSLIC as successor in interest to Sunrise" in their correspondence and submissions to this Court. Although it may be accurate on its face, this expression blurs the distinction between FSLIC Receiver and FSLIC Corporate, a distinction which has been of significance repeatedly in this litigation. See In re Sunrise Securities Litigation, 698 F.Supp. 1256, 1257, n. 2 (because FSLIC Corporate is plaintiff, action deemed to arise under federal law, and federal settlement bar rule applicable); Order of July 29, 1987 dismissing counterclaims and certain affirmative defenses of Blank Rome (relying on distinctions between Old Sunrise, New Sunrise, FSLIC Corporate and FSLIC Receiver); Order of July 29, 1987 dismissing certain affirmative defenses of the outside directors (relying on same distinctions). See also Memorandum and Order, C.A. 88–1713, April 17, 1989 (E.D.Pa.), at 1–2 (explaining distinction between Old Sunrise and New Sunrise).

The agreement does provide that "[t]urn-over of these documents pursuant to this agreement will not constitute a waiver by Blank, Rome or any of its former partners and employees of the asserted attorney work product protection with respect to these or any other documents." But even though the parties intended not to waive work product protection, I cannot simply read all references to "FSLIC" in the agreement to mean "FSLIC Receiver only".

**14.** The agreement prevents FSLIC from allowing "any third party to inspect, review or use the documents in any manner whatsoever, absent a court order." The agreement provides that "the term 'third party' includes all of the parties in MDL No. 655, as well as the shareholder plaintiffs and any government agency or entity," and arguably might encompass FSLIC other than as "successor in interest to Sunrise." But the agreement also provides that "third party" "does not include legal counsel for FSLIC, or the non-legal staff employed by counsel for FSLIC." Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit B.

**15.** See In re Doe, 662 F.2d at 1081 ("to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material").

tecting the integrity of the adversary process.[16]

Finally, as in *In re Subpoenas Duces Tecum*, there is "no policy factor now inherent in the work product privilege [that] calls for a special exception" for Blank Rome's voluntary production of work product documents, since "the privilege does not protect against the manipulation of selecting a particular opponent for selective disclosure—most probably for the discloser's own benefit." 738 F.2d at 1374–1375. As a result, Blank Rome has waived work product protection for the documents handed over to FSLIC,[17] and I will order that Blank Rome produce them to the moving parties.[18]

As to those work product documents which Blank Rome expressly declined to produce to FSLIC, claims of work product protection have not been waived.[19] The moving parties argue that work product protection nevertheless does not apply to these documents because Blank Rome is a defendant, and the legal advice it gave Sunrise is directly at issue in this litigation. Courts have recognized an exception to the work product doctrine in cases where an attorney's "mental impressions and opinions are directly at issue." *Reavis v. Metropolitan Property and Liability Insurance Co.*, 117 F.R.D. 160, 164 (S.D.Cal. 1987). *See Coleco Industries, Inc. v. Universal City Studios*, 110 F.R.D. at 690 (noting that "a consistent line of cases has developed an exception to the work-product privilege where the party raises an issue which depends upon an evaluation of the legal theories, opinions and conclusions of

**16.** Accordingly, when analyzing efforts to keep work product materials confidential, courts have focused on the fact of disclosure to an adversary, not on the extent to which the adversary might use the information. *See GAF Corporation v. Eastman Kodak Co.*, 85 F.R.D. 46, 51 (S.D.N.Y.1979) ("if disclosure substantially increases the possibility that an opposing party could obtain the information disclosed ... the disclosing party's work product privilege [is] deemed waived") (citing 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024 at 210 (1970)).

In *Chubb Integrated Systems v. National Bank of Washington*, 103 F.R.D. 52 (D.D.C.1984), for example, Chubb voluntarily disclosed work product documents to NCR Corporation, its adversary in a separate action, subject to an agreement allowing Chubb to review the documents and assert privileges after delivering them to NCR. The Court held that, although the agreement prevented NCR "from raising the issue of waiver or from otherwise utilizing the information disclosed," Chubb had "no genuine claim of confidentiality to the documents it produced to NCR." 103 F.R.D. at 68. Similarly, in the present case, Blank Rome has no genuine claim of confidentiality to the documents, since they were produced to counsel for its adversary, FSLIC Corporate.

**17.** The discussion *supra* disposes of FSLIC's only grounds for opposing the non-Blank Rome defendants' motion to compel production of the work product documents by FSLIC. But because I will order Blank Rome to produce the documents in accordance with Section V, Paragraph D of Pretrial Order No. 5, the motions to compel Blank Rome work product from FSLIC are moot.

**18.** Blank Rome does not contend that the documents turned over to FSLIC are not discoverable under F.R.C.P.Rule 26(b)(1) as not "reasonably calculated to lead to the discovery of admissible evidence." In its letter to this Court of January 13, 1989, for instance, counsel for Blank Rome stated that "[i]f the Court rules against Blank, Rome on [the distinction between FSLIC Corporate and FSLIC Receiver], the documents should be produced without any need for the Court to specifically review any of them."

**19.** The moving parties argue that "Blank Rome's selective disclosure constitutes an implied waiver of all work product relevant to the same issue as the documents produced." Memorandum in Support of Certain Defendants' Amended Motion to Compel Against Blank Rome and Foxman, at 7, n. 7. Courts have recognized such an implied subject matter waiver of work product protection where the waiver occurs through "unilateral testimonial use of work product materials." *United States v. Nobles*, 422 U.S. at 240, 95 S.Ct. at 2171; *see Coleco Industries v. Universal City Studios*, 110 F.R.D. 688, 691–692 (S.D.N.Y.1986). But no testimonial use has occurred here. *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir.1976) (holding that "to the extent that a concept of subject matter waiver is applicable to Rule 26(b)(3) under the rationale of the *Nobles* case, ... it does not extend to a case such as this where there has been only inadvertent or partial disclosure in response to specific inquiries, and in which no testimonial use has been made of the work product"); *see also* Wright & Miller, Federal Practice and Procedure: Civil § 2024, at 209 ("[D]isclosure of some documents does not destroy work product protection for other documents of the same character.")

counsel"); 4 J. Moore, Federal Practice ¶ 26.64[3.–2], at 26–385 (1987) ("Cases indicate that when the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are 'work product.' ")

In *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa.1973), for example, defendants claimed that plaintiffs' action for rescission of an insurance policy was barred because plaintiffs knew or should have known of the grounds for rescission long before they filed suit. The defendants sought documents from plaintiffs' counsel relating to their investigation of and advice concerning claims under the policy and the basis for rescission. This Court denied work product protection to these documents, stating that

> [b]ecause the nature of this defense concerns knowledge, legal theories and conclusions of plaintiffs' attorneys charged with claim investigation, such "advice of counsel" evidenced in these documents is discoverable when it is directly relevant to a possible rescission action or suggests reasons to indicate the propriety of such an action. 61 F.R.D. at 47.

Similarly, in *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.*, 66 F.R.D. 129 (E.D.Pa.1975), this Court ordered production of an attorney's file, which contained memoranda and other work product materials prepared by the attorney, because "[t]he activities of counsel in the underlying lawsuit are the basis of [defendant]'s defense in this case." 66 F.R.D. at 136.

Allegations of negligence or other misconduct while rendering legal advice also can place attorneys' mental impressions and opinions directly at issue and eliminate work product protection. The District of Columbia District Court faced such a situation in *Securities and Exchange Commission v. National Student Marketing Corp.*, 18 F.R.Serv.2d 1302 (D.D.C.1974). Defendant White & Case, which had served as outside legal counsel to National Student Marketing Corporation ("NSMC") dur-

ing a merger transaction, was charged with "failure to disclose relevant and damaging financial data and improper participation in [the] merger closing; involvement in the issuance of a questioned opinion ...; [and] illegal reporting of the sales of two NSMC's subsidiaries." 18 F.R.Serv.2d at 1304. White & Case asserted work product protection for a number of documents it had prepared prior to the filing of the complaint, even though its former client NSMC consented to a permanent injunction providing, among other things, that NSMC had "divested itself of any interest it might have in immunizing attorney 'work-product' from discovery." 18 F.R.Serv.2d at 1306.

But the Court held that the documents were not protected work product because White & Case were named defendants and NSMC had consented to judgment and ceased participation in the case. In particular, the Court noted that "[t]he fact that White & Case are themselves defendants charged with acts allegedly committed partly in concert with their client, while presumably representing their client's interests, clearly sets them apart and highlights this case as one in marked contrast with the typical situation where shelter is sought under 'work-product' doctrine." 18 F.R.Serv.2d at 1305. The Court held that

> [t]he Hickman rule, as well as the 1970 amendments to the Federal Rules, cannot be viewed as a means by which attorneys, based solely upon that status, are to be elevated to a preferred position when involved as parties in the litigation process. The sound basis for granting special treatment to attorney 'work-product' is the realization that, in appropriate circumstances, the adversary system of justice requires that certain activities of attorneys be sheltered from discovery. It would be difficult indeed for White & Case to now posit their reliance upon theories of work product in terms of serving or protecting the rights of a former client and co-defendant who no longer has any interest in this injunctive action. 18 F.R.Serv.2d at 1306.

■ The same factors relied on by the *NSMC* Court are present in this case. The knowledge, mental impressions, opinions and advice of defendant Blank Rome as counsel to Sunrise clearly are at issue here. FSLIC has alleged that Blank Rome committed a variety of wrongs while counsel to Sunrise including professional negligence, breach of contract, aiding and abetting breaches of fiduciary duties, aiding and abetting violations of law and conflict of interest.[20] FSLIC First Amended Complaint, at ¶¶ 271–280. Plaintiff shareholders have claimed that Blank Rome, Foxman and Gitomer committed securities and common law fraud, and were guilty of deceit and intentional misrepresentation. Restated Second Consolidated Amended Complaint, ¶¶ 34–44, 55–58. Many of the individual defendants have filed cross-claims against Blank Rome based on the allegations in the FSLIC and shareholder complaints or have claimed "advice of counsel" as an affirmative defense to claims by FSLIC and the shareholder plaintiffs.[21] Moreover, Blank Rome cannot contend that work product protection should apply to protect their client's interests, since FSLIC "as successor in interest to Sunrise" has waived all claims of privilege as to Blank Rome, including both attorney client privilege and work product protection. Reply Memorandum of Certain Defendants to Response of Blank Rome to Motion to Compel, Exhibit 1.

It is impossible to tell from the descriptions presently before this Court [22] whether the documents contain information directly at issue in this litigation.[23] I therefore will ask that the Blank Rome documents for which work product protection has not already been waived by production to FSLIC be reviewed by the Special Master to determine whether they fall within the at issue exception.

■ As Blank Rome argues, documents fall within the at issue exception to work product protection only if they contain information "directly at issue, and the need for [their] production is compelling." *Bird*, 61 F.R.D. at 47. But a party is not required to prove that information cannot be discovered by any method other than document production to establish "compelling need." [24] The "compelling need" inquiry

**20.** Foxman, Treadwell and Gitomer are among those identified as Blank Rome partners during the period when Blank Rome was counsel to Sunrise, and are, therefore, among the John Doe defendants in the FSLIC action. *See* FSLIC First Amended Complaint, Addendum.

**21.** *See, e.g.,* Answer and Cross–Claims of Defendants Alan B. Keiser et al. to FSLIC Complaint; Jacoby's Answer to FSLIC Complaint, Ninth Affirmative Defense and Cross–Claim Against Blank Rome; Jacoby's Answer to Shareholder Complaint, Defense III; Taber's Answer to FSLIC Complaint, Tenth Defense; Taber's Answer to Shareholder Complaint, Eighth Defense; Calsin's Answer to Shareholder Complaint, ¶ 84; Frame's Answer to FSLIC Complaint, ¶ 292; Frame's Answer to Shareholder Complaint, Defense V; Devaney's Answer to FSLIC Complaint, Eighth Defense.

**22.** In its brief, Blank Rome has identified those work product documents concerning loans at issue in this litigation, loans not at issue in this litigation, as well as those prepared in anticipation of grand jury proceedings, current litigation and miscellaneous matters. *See* Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit C.

**23.** For example, Blank Rome admits that the grand jury investigation concerned some of the same loans challenged by FSLIC in the present action, but nevertheless contends that the work product documents related to the grand jury investigation may not contain information directly at issue here. Blank Rome also has categorized a number of work product documents under the heading "current litigation," but fails to state what significance should be attributed to this category. As a result, review of individual documents will be necessary to determine whether they contain information directly at issue.

**24.** Thus, contrary to Blank Rome's assertions, the moving parties are not limited to discovery of only those documents containing information which cannot be discovered through depositions or other methods of discovery. *See* Response of Blank Rome to Certain Defendants' Amended Motion, at 13. As one Court has noted in defining "compelling need", contemporaneous records have "an inherent reliability which cannot now be duplicated by any other source of evidence." *In the Matter of Hawaii Corp.*, 88 F.R.D. 518, 525 (D. Hawaii 1980) (holding that party had established for "compelling need" for personnel files prepared contemporaneously regardless of availability of other forms of discovery).

focuses on the party from whom discovery is sought, not on the particular mode of discovery. So, for example, the *Bird* Court's analysis centered on the attorneys' exclusive control over information concerning their state of knowledge and actions regarding the rescission action:

> Since the relevant inquiry is into what plaintiffs knew or should have known concerning grounds for their rescission action, *only through discovery of information in the hands of plaintiffs, and their agents,* can defendants substantiate their defense. Since in this case counsel served as investigators and advisors on the merits of the potential and actual claims asserted by defendants under the policy, and therefore alone could ascertain the justification for a rescission action, discovery of the relevant documents in their possession is essential to defendants' case. 61 F.R.D., at 46–47 (emphasis added).[25]

Thus, "compelling need" exists whenever information is within the exclusive control of the party from whom discovery is sought, regardless of whether the information might also be obtained from that party through depositions, interrogatories or document production. I therefore will ask the Special Master to review the documents, and to order production of those documents containing information directly at issue in this litigation for which the moving parties have compelling need, i.e. those documents containing any information over which Blank Rome has exclusive control.

## II. *Blank Rome—Attorney Client Privilege Documents*

■ Blank Rome has withheld a number of documents [26] on the basis of attorney client privilege asserted on behalf of Fitzgerald, David L. Devaney, William Frame, Gitomer, Earl Slosberg, Georgeann Grisby, Robert Jacoby, Bibi Jacoby, a joint venture between Robert Jacoby, Frame, Gitomer and Devaney (the "JFGD joint venture") [27], and Blank Rome itself. The moving parties contend that the attorney client privilege does not shield these documents for a number of reasons, including that: Blank Rome has failed to establish the elements of the privilege; the privilege for communications between Sunrise officers or directors and Blank Rome belongs to Sunrise, which has waived the privilege; no privilege applies to communications between Blank Rome and Robert Jacoby, Frame or Devaney, since they have raised reliance upon advice from Blank Rome as a defense; any privilege between Blank Rome and Robert Jacoby or Frame is void under the crime/fraud exception [28]; and Blank Rome cannot claim attorney client

---

**25.** At the same time, the *Bird* Court declined to allow discovery of documents created after the rescission action was filed because "such information is available to defendants from other sources." 61 F.R.D. at 48. And nowhere in its discussion of the documents to be produced under the at issue exception does the Court discuss the availability of alternative forms of discovery. *See* 61 F.R.D. at 46–47.

The *NSMC* Court also did not discuss the availability of alternative forms of discovery in requiring production; it reviewed the withheld documents only to determine if they were discoverable under Rule 26(b)(1). *See* 18 F.R. Serv.2d at 1306–1307.

**26.** The withheld Blank Rome attorney client privilege documents are categorized by client in Response of Blank Rome to Certain Defendants' Amended Motion, Appendix E. The documents for which Blank Rome claims to have been both attorney and client are listed in Response of Blank Rome to Certain Defendants' Amended Motion, Appendix F.

**27.** The JFGD joint venture was a joint venture entered by three officers and one director of Sunrise, Robert Jacoby, Frame, Gitomer and Devaney, to purchase land from a Sunrise borrower, alleged to be Thomas Waldron. FSLIC's Memorandum of Points and Authorities Relating to Common Issues, at 2–3; Jacoby's Response to FSLIC's Motion, at 4–5. FSLIC has alleged that "[s]ubsequent to the joint venture's purchase of the land from Waldron, the Sunrise officers, in violation of their fiduciary duties to Sunrise, lent Waldron large amounts of money to invest in speculative and questionable business ventures." FSLIC's Memorandum of Points and Authorities Relating to Common Issues, at 3.

**28.** Because, as explained below, I hold that Robert Jacoby and Frame have waived any attorney client privilege they may have held for communications with Blank Rome by invoking reliance on advice of counsel as a defense, I need not consider whether the crime/fraud exception applies to the Jacoby or Frame documents.

privilege for correspondence between members of the firm.

The attorney client privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in observance of the law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). But "because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its [purpose].'" *In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir.1979) (citation omitted) (quoting 8 *Wigmore on Evidence* § 2291, at 545 (1961)). Thus, it applies to bar disclosure only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–359 (D.Mass. 1950); *In re Grand Jury Investigation,* 599 F.2d at 1233. This Court has held that "[w]hen the record is ambiguous as to the elements necessary to establish a claim of attorney-client privilege, the burden is on the party asserting it ... [to] show, by record evidence such as affidavits, sufficient *facts* as to bring the communications at issue within the narrow confines of the privilege." *Delco Wire & Cable, Inc. v.*

*Weinberger,* 109 F.R.D. 680, 687–688 (E.D. Pa.1986) (citations omitted) (emphasis in original).

Under this standard, Blank Rome has failed to show facts sufficient to establish that the Fitzgerald, Bibi Jacoby, Slosberg or Grisby documents are privileged. Blank Rome has submitted affidavits purporting to establish the elements of the privilege for the Devaney, William Frame, Gitomer, Slosberg, Grisby, Robert Jacoby, JFGD joint venture and Blank Rome documents. Response of Blank Rome to Certain Defendants' Amended Motion, Appendices E and F. But no affidavits have been submitted for the Fitzgerald or Bibi Jacoby documents, and the affidavits purportedly establishing the privilege for Slosberg and Grisby (prepared by attorneys Fred Blume and Nicholas Kouletsis, respectively) do not establish that these clients have claimed the protection of the privilege.[29] I therefore will ask the Special Master to review these documents and conduct such further factfinding as is necessary to determine whether these clients have claimed the privilege and whether the privilege is applicable, and to order production of all non-privileged documents.

Any attorney client privilege that may have attached to the Robert Jacoby, Frame, Devaney or JFGD joint venture documents has been waived. If "a party asserts as an essential element of his defense reliance upon the advice of counsel, ... the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 721 (N.D.Ill.1978); *see Barr Marine Products Co., Inc. v. Borg-Warner,* 84 F.R.D. 631, 635 (E.D.Pa.1979) (noting that courts have found waiver of the attorney client privilege "where the party resisting discovery raises as a defense that which tran-

---

**29.** Neither Blume's statement that "Mr. Slosberg has not advised me that he is waiving the attorney-client privilege that attaches to these documents" nor Kouletsis' statement that "[n]either Blank Rome nor its counsel know how to locate Ms. Grisby" suffices to establish that Slosberg or Grisby has claimed the privilege. *See* Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit E.

spired between client and counsel, or reliance on advice of counsel, or questions counsel's authority"). As Blank Rome admits, Robert Jacoby, William Frame and Devaney have all invoked reliance upon advice of counsel as a defense to the claims against them in this litigation. *See supra,* n. 21. As a result, they have waived the attorney client privilege with respect to all communications they made to Blank Rome concerning the transactions for which they sought Blank Rome's legal advice.

Blank Rome contends that "[t]he fact that an officer asserts that he relied upon advice of counsel with respect to some issue presented in this litigation does not open to discovery privileged communications as to other issues which are not implicated or involved in the present litigation." Response of Blank Rome to Certain Defendants' Amended Motion, at 18. I agree that applicability of attorney client privilege and relevance are two separate issues. Regardless of the waiver of attorney client privilege, the Robert Jacoby, William Frame and Devaney documents need be produced only if they contain information "reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. Rule 26(b)(1). I therefore will request the Special Master to review these documents and to order production of those discoverable under Rule 26(b)(1).[30]

Robert Jacoby's, William Frame's and Devaney's invocations of reliance upon advice of counsel in their own defense also have waived the attorney client privilege asserted by Blank Rome on behalf of the JFGD joint venture. Because the JFGD joint venture was an unincorporated association of Robert Jacoby, William Frame, Gitomer and Devaney, the joint venture has no claim of privilege other than that of its individual members. In other words, each individual member of the JFGD joint venture must establish each element of the privilege to support the joint venture's privilege. The waiver of privilege by Robert Jacoby, William Frame and Devaney thus has waived the JFGD joint venture's privilege as well, and I will order Blank Rome to produce those documents withheld on its behalf.[31]

It is not possible to determine from the information before this Court whether the attorney client privilege applies to the documents Blank Rome has withheld on behalf of Gitomer. The documents in question contain information communicated by Gitomer, a former Sunrise board chairman, to Blank Rome, former Sunrise outside counsel. Corporate officers "do not have an attorney-client privilege with regard to communications made in their role as corporate officials." *In the matter of Bevill, Bresler and Schulman Asset Management Corporation,* 805 F.2d 120, 125 (3d Cir.1986). Rather, "any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer." 805 F.2d at 124. In the present case, as noted above, Sunrise has waived all claims of privilege as to communications with Blank Rome.[32]

To assert a claim of attorney client privilege as to communications with corporate counsel, corporate officers must satisfy the test approved in *Bevill:*

First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, know-

---

**30.** The moving parties have stated that they do not seek two of the previously requested documents in this group, one withheld on behalf of Frame (BSX8000920A942), and one withheld on behalf of Devaney (BSX2007627), because they relate to affairs not implicated or involved in this litigation. Reply Memorandum of Certain Defendants to Blank Rome's Response, at 22, n. 19.

**31.** Blank Rome does not contend that the JFGD joint venture documents are not discoverable under Rule 26(b)(1). *See* Response of Blank Rome to Certain Defendants' Amended Motion, at 17–18.

**32.** *See supra,* pp. 568–569.

ing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company. 805 F.2d at 123.

Therefore, I will ask the Special Master to decide if the documents withheld on behalf of Gitomer must be produced by determining whether they meet the *Bevill* test, and in particular, by determining whether they concern Gitomer's personal affairs or matters within the general affairs of Sunrise.[33]

Finally, Blank Rome has withheld a number of documents as to which it claims attorney client privilege applies because Blank Rome was both attorney and client.[34] Blank Rome cites no authority for its novel assertion that a law firm may consult its own attorneys as house counsel to secure legal advice in connection with or related to the firm's representation of a client, and as a result obtain the protection of the attorney client privilege on the basis that it is its own client. Only communications from one person or entity, a client, to another person or entity, an attorney, can be protected by the attorney client privilege. *See United Shoe,* 89 F.Supp. at 358–359. Blank Rome presents no facts to support treating the communications in question as between attorney and client, rather than as between members of one and the same entity.[35] Without any supporting legal precedent, I will not extend the attorney client privilege to protect communications between members of a law firm, and I will order that Blank Rome produce the documents withheld on behalf of Blank Rome as both attorney and client.

### III. *Blank Rome, Jacoby, Frame, Gitomer, Devaney—Joint Defense Privilege Documents*

Blank Rome has asserted that the joint defense privilege protects a number of documents prepared in connection with a federal grand jury investigation related to Sunrise in the Southern District of Florida. According to Blank Rome, the privilege belongs to two groups of people or entities investigated by the grand jury: Robert Jacoby, William Frame, Gitomer, Devaney, Sunrise and their respective counsel, relating to the JFGD joint venture; and the members of the first group plus Skubal, Calsin, Taber, Fitzgerald, Pitt and Waldron, relating to other matters investigated by the grand jury. In addition, Robert Jacoby, William Frame, Gitomer and Devaney have withheld from FSLIC documents relating to the JFGD joint venture based in part on a joint defense privilege between

33. Of course, Robert Jacoby, Frame and Devaney, among others, were also Sunrise officers or directors when they made communications to Blank Rome for which attorney client privilege has been asserted. But, as discussed above, these individuals have waived the attorney client privilege as to the documents withheld by Blank Rome, so that the Special Master's review of their documents is confined to relevance. *See supra,* pp. 571–572.

34. The moving parties do not seek documents reflecting Blank Rome's communications with its outside counsel, or "internal communications in which [Blank Rome] was representing itself in the shareholders' case" reflected in documents "created after separate counsel was obtained for Sunrise." Reply Memorandum of Certain Defendants to Response of Blank Rome, at 28–29. They do, however, take issue with Blank Rome's categorization of these documents in Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit F. I therefore will ask the Special Master to review the doc-

uments listed under the headings "Post–Suit Documents Where Blank, Rome Is Acting As Its Own Counsel" and "Post–Suit Documents Where Blank, Rome Is Relying On Outside Counsel," and to order production of any non-privileged documents.

35. Blank Rome seems to suggest that the attorney/client distinction arises because the communications in question were from Blank Rome members involved in representing Sunrise ("Blank Rome the client") seeking advice from Blank Rome members not involved in representing Sunrise ("Blank Rome the attorney"). But at least some of the attorneys purportedly seeking advice as "Blank Rome the client" were themselves consulted for advice as "Blank Rome the attorney"; Blank Rome admits in its brief that only "some of the attorneys consulted had no involvement with Blank, Rome's ongoing representation of Sunrise." Response of Blank Rome to Certain Defendants' Amended Motion, at 27.

the members of the JFGD joint venture and Sunrise.[36]

The moving parties argue that any joint defense privilege for these documents has been waived because, in the present litigation, FSLIC has asserted Sunrise's rights against the other joint defendants. Blank Rome, Jacoby and Devaney contend that the privilege has not been waived because in this litigation the joint defendants are adversaries of FSLIC Corporate and not of FSLIC Receiver, the successor to Sunrise.

The joint defense privilege protects communications between an individual and the attorney of another, or between two or more persons and an attorney, concerning a mutual concern, where the communications are "part of an on-going and joint effort to set up a common defense strategy." *Eisenberg v. Gagnon,* 766 F.2d 770, 787 (3d Cir.1985), *cert. denied sub nom., Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). In *Bevill,* the Court of Appeals for the Third Circuit held that to establish the existence of the joint defense privilege, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Bevill,* 805 F.2d at 126.

▇ The joint defense privilege is waived "where one of the joint defendants becomes an adverse party in a litigation." *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 29 (N.D.Ill.1980). The privi-

lege is deemed waived in this situation for two reasons:

> In the first place the policy of encouraging disclosure by holding out the promise of protection seems inapposite, since as between themselves neither would know whether he would be more helped or handicapped, if in any dispute between them, both could invoke the shield of secrecy. And secondly, it is said that they had obviously no intention of keeping these secrets from each other, and hence as between themselves it was not intended to be confidential.

McCormick on Evidence (Third Ed.1984) § 91, at 219.

The privilege also is waived "in an action brought by or against a successor-in-interest to a former joint client where any one of the other former joint clients stands as an opposing party in such action." *In the Matter of a Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F.Supp. 381, 393–394 (S.D.N.Y.1975).

I find that any joint defense privilege has been waived in this case. FSLIC Corporate filed the Fiduciary Duty case as assignee of Sunrise's rights against, among other defendants, the members of the joint defense group.[37] Indeed, because of the assignment, only FSLIC Corporate (and *not* FSLIC Receiver) could assert Sunrise's rights against the members of the joint defense group.[38] As a result, FSLIC Corporate's suit against the joint defense group was, in effect, a suit by Sunrise itself;[39] the joint defense privilege therefore was waived, and I will order that

---

**36.** Of these four, only Jacoby and Devaney argue that the JFGD joint venture documents are protected by the joint defense privilege. Gitomer has withheld these documents, as well as others, based on an objection that FSLIC's document request is overbroad. To the extent that FSLIC requested any documents relating to the JFGD joint venture, this objection is overruled. Frame has not filed any response to FSLIC's motion to compel.

**37.** *See* FSLIC First Amended Complaint, at ¶ 1.

**38.** Blank Rome admits as much in its response memorandum: "FSLIC, Receiver is not a party to these proceedings nor in a stance adverse to any of these individuals, nor could it be in view of the assignment to FSLIC Corporate of the right to sue the various individuals comprising

the joint defense group." Response of Blank Rome to Certain Defendants' Amended Motion, at 29.

**39.** Blank Rome contends that only FSLIC Receiver could waive the privilege by standing adverse to the joint defense group, even though FSLIC Receiver had assigned to a third party its legal right to stand adverse to the joint defense group. But Blank Rome's rule, if adopted, would eliminate waiver entirely where the right to sue has been assigned, conflicting with the holding in *Grand Jury Subpoena Duces Tecum Dated November 16, 1974.* Blank Rome advances no legal authority for rejecting the reasoning of that opinion, and I decline to do so.

Blank Rome produce the joint defense documents, and that Jacoby, Frame, Gitomer and Devaney produce all requested documents relating to the JFGD joint venture.

### IV. Blank Rome—"Grand Jury Privilege" Documents

Blank Rome has invoked what it terms "the Grand Jury Privilege" to withhold various documents relating to the Sunrise grand jury investigation sought by the moving parties, including indices and documents produced to the grand jury, memoranda and correspondence among Blank Rome attorneys, correspondence between Blank Rome and counsel for various Sunrise officers, correspondence between Blank Rome and the Assistant U.S. Attorney in charge of the investigation, and motions.[40] Blank Rome contends that production of these documents would breach the policy of grand jury secrecy, and therefore should not be allowed. The moving parties argue that there is no "grand jury privilege" applicable to the requested documents, and that, in any event, production of the documents would not breach grand jury secrecy.

■ The sole basis asserted by Blank Rome for a "grand jury privilege" is the "settled federal policy that the grand jury system requires secrecy of grand jury proceedings." *In re Grand Jury Matter*, 682

F.2d 61, 63 (3d Cir.1982). "Rule 6(e) of the Federal Rules of Criminal Procedure is intended to preserve this norm of secrecy by preventing the disclosure of matters occurring before a grand jury." 682 F.2d at 63. Rule 6(e)(2) states the general rule of secrecy:

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) [41] of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. *No obligation of secrecy may be imposed on any person except in accordance with this rule.* A knowing violation of Rule 6 may be punished as a contempt of court. (emphasis added)

Plainly, Blank Rome does not fit in any of the classes enumerated by the Rule; consequently, Rule 6(e)(2) does not prevent Blank Rome from disclosing the requested documents. Moreover, Blank Rome can cite no authority independent of Rule 6(e) for imposing an obligation of secrecy: every case relied upon by Blank Rome for the policy of imposing secrecy cites and interprets Rule 6(e) [42]; and Rule 6(e)(2) explicitly prevents imposition of an obligation of secrecy on any person except in accordance

---

**40.** The moving parties do not seek grand jury transcripts, orders of the grand jury supervisory court, subpoenas issued by the grand jury or documents placed under seal by Order of the U.S. District Court for the Southern District of Florida. Memorandum in Support of Certain Defendants' Amended Motion to Compel Against Blank Rome and Foxman, at 33, n. 24; Reply Memorandum of Certain Defendants to Blank Rome's Response, at 35, n. 31.

**41.** Rule 6(e)(3)(A)(ii) provides for disclosure to "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law."

**42.** See *In re Grand Jury Proceedings*, 309 F.2d 440, 443 (3d Cir.1962); *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 388 (N.D.Ill.1979); *In re Grand Jury Proceedings*, 29 F.R.D. 151, 153 (E.D.Pa. 161), *aff'd*, 309 F.2d 440 (3d Cir.1962);

*In re Grand Jury Investigation*, 610 F.2d 202, 216–217 (5th Cir.1980); *In re Biaggi*, 478 F.2d 489, 492 (2d Cir.1973); *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 425, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983); *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218–231, 99 S.Ct. 1667, 1672–1679, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958); *William Iselin & Co., Inc. v. Ideal Carpets, Inc.*, 510 F.Supp. 343, 345–347 (N.D.Ga.1980); *State of Texas v. United States Steel Corp.*, 546 F.2d 626, 629 (5th Cir.1977); *In re Grand Jury Matter*, 640 F.Supp. 63, 64 (E.D. Pa.1986); *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960); *In the Matter of Special March 1981 Grand Jury*, 753 F.2d 575, 577 (7th Cir.1985); *In re Grand Jury Investigation*, 774 F.2d 34, 37 (2d Cir.1985); *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 59 (E.D.Pa. 1980); *In re Grand Jury Empanelled March 8, 1983*, 579 F.Supp. 189, 190 (E.D.Tenn.1984).

with the Rule. *See, e.g., Sells Engineering*, 463 U.S. at 425, 103 S.Ct. at 3138 ("Witnesses are not under the prohibition unless they also happen to fit into one of the enumerated classes"); *In re Grand Jury Subpoena Duces Tecum*, 575 F.Supp. 1219, 1221 (E.D.Pa.1983) (holding that Rule 6(e)'s explicit directive cannot "be overridden by this court's general supervisory authority over grand juries" to impose an obligation of secrecy on grand jury witnesses).

Blank Rome attempts to distinguish between imposing an obligation of secrecy on a witness and compelling that witness's disclosure, based on the *William Iselin* Court's statement that:

> [w]hen the witness chooses to disclose his testimony, this ground of grand jury secrecy remains unaffected. However, when another party is attempting to compel disclosure, the policy which requires secrecy must be balanced against the policy requiring that there be full disclosure of all available evidence in order that the ends of justice may be served. The decision as to whether or not to order disclosure of grand jury testimony is one committed to the sound discretion of the trial court. 510 F.Supp. at 346 (citations omitted)

*See also State of Texas*, 546 F.2d at 629–631 (holding that particularized need must be shown to compel grand jury witnesses to produce grand jury subpoenas, schedules, notices, summonses, documents and transcripts of testimony before grand jury).

Thus Blank Rome's argument is that the Court can compel it to produce the documents it does not wish to produce only upon a showing of particularized need; it takes this position even though under Rule 6(e) if it wished to produce these same documents, the Court could not impose any obligation of silence. In effect, Blank Rome argues for adoption of a "grand jury privilege," purportedly intended to protect the secrecy of grand jury proceedings, which could be waived or asserted by a party at will without regard for the secrecy of grand jury proceedings. But adoption of such a privilege clearly would not protect the secrecy of grand jury proceedings, and would extend the holdings of *William Iselin* and *State of Texas* far beyond protection of grand jury testimony or documents.[43]

In short, Blank Rome provides no legal authority for a "grand jury privilege" or for otherwise imposing an obligation of secrecy on Blank Rome under the circumstances of this case, and I will order Blank Rome to produce the requested "grand jury privilege" documents.

## V. *Blank Rome—Documents Created Before Incorporation of Sunrise or After Blank Rome Turned Over Its Files to Successor Counsel*

■ Blank Rome has withheld as irrelevant documents created before Sunrise was incorporated on March 10, 1980, or after the date on which Blank Rome turned over its Sunrise files to successor counsel, between July 19 and December 31, 1985.[44] F.R.C.P.Rule 26(b)(1) provides that information may be discovered even if inadmissible at trial "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Thus, a document's discoverability seldom turns solely on the date of its preparation.

---

**43.** Although particularized need must be shown to discover grand jury transcripts, it is not required for discovery of every document having some connection with, or containing some reference to, a grand jury. *See Golden Quality Ice Cream*, 87 F.R.D. at 59 ("Insistence that disclosure must turn on a showing of particularized need would be warranted if what was at issue was the disclosure of grand jury transcripts, but where, as here, the grand jury has completed its work and all that is sought are those documents turned over to the grand jury by the corporations which are defendants in the civil case, the considerations referred to in *Douglas Oil* as mi-

litating against disclosure are beside the point") (citations and footnotes omitted).

Moreover, the particularized need requirement for discovery of grand jury transcripts is based on Rule 6(e), which, as noted above, is not applicable here. *See Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1665.

**44.** The actual date varies by file. *See* Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit H (Letter of Nicholas M. Kouletsis, January 19, 1988).

*See, e.g., Midland Investment Co. v. Van Alstyne, Noel & Co.,* 59 F.R.D. 134, 138 (S.D.N.Y.1973) ("Merely because the document is dated after the last act complained of, however, does not make it immune from discovery if it relates to relevant discoverable information.")

I therefore will ask the Special Master to review the documents withheld by Blank Rome based on a "time frame" objection, and order their production if they are discoverable under Rule 26(b)(1) in light of the issues in this litigation as framed by the pleadings.

VI. *Blank Rome—Work Product and Attorney Client Privilege Documents Withheld from Fitzgerald*

■ Defendant Fitzgerald was formerly a Blank Rome partner, and worked in Blank Rome's West Palm Beach office between May 1983 and September 23, 1984. Fitzgerald has moved to compel production of five groups of documents withheld from him by Blank Rome: (1) memoranda authored by Fitzgerald and memoranda or correspondence sent to Fitzgerald withheld as work product; (2) memoranda or correspondence authored by Fitzgerald or received by Fitzgerald withheld under the attorney client privilege; (3) documents withheld on the basis of a "grand jury privilege"; (4) documents withheld under both work product protection and attorney client privilege on behalf of Fitzgerald as client; and (5) documents recording discussions with or referring to Fitzgerald withheld as work product. Blank Rome offers no opposition to production of the first three categories of documents, and opposes production of only some of the documents in categories (4) and (5).[45] Because it is unclear whether Blank Rome has yet produced the uncontested documents,[46] I will order that Blank Rome produce them to Fitzgerald.

Blank Rome has withheld documents in category (4) based on its own work product privilege and on the attorney client privilege asserted on behalf of Fitzgerald as client. Of course, the attorney client privilege "belongs to the client, not the attorney; and an attorney can neither invoke nor waive the privilege if his client desires the contrary." *In re Grand Jury Proceedings,* 73 F.R.D. 647, 652 (M.D.Fla.1977).

Blank Rome claims that it has not produced these documents to Fitzgerald out of concern that production would be considered a waiver of Blank Rome's work product protection. But production to Fitzgerald would not waive these documents' work product protection: Fitzgerald is not an adversary of Blank Rome in this litigation;[47] there is a reasonable basis for believing that these documents will be kept confidential, since Fitzgerald has distinguished between his rights to these documents and those of other parties to the litigation, and has claimed he is entitled to share "in any valid claims of privilege as to these documents asserted by Blank, Rome";[48] and public policies inherent in the privilege militate against construing production to the client as waiver. *In re Subpoenas Duces Tecum,* 738 F.2d at 1372.[49] Moreover, a client could not control the attorney client privilege if his or her attorney were able to assert work prod-

---

**45.** Those documents to which Blank Rome offers opposition are listed in Response of Blank Rome to Fitzgerald's Motion to Compel Discovery, Exhibit A.

**46.** *See* Reply of Fitzgerald to the Response of Blank Rome to Fitzgerald's Motion to Compel Discovery, at 1–2.

**47.** Indeed, Fitzgerald is a defendant in this litigation solely in his capacity as a Blank Rome partner during the period 1982–1985. *See* FSLIC First Amended Complaint, Addendum; Restated Second Consolidated Amended Complaint; Depositors' Complaint.

**48.** *See* Memorandum of Law in Support of Fitzgerald's Motion to Compel Discovery from Blank Rome, at 1–2; Reply of Fitzgerald to the Response of Blank Rome to Fitzgerald's Motion to Compel Discovery, at 3.

**49.** *See supra,* discussion in Section I. *See also* Pretrial Order No. 5, Section VII: "The sharing of attorney work product or information or documents protected by the attorney client privilege among plaintiffs or among defendants in the course of this litigation shall not act as a waiver of the work product or attorney client privilege."

uct protection against that client for documents prepared on his or her own behalf. As a result, I find that any work product protection these documents might have does not prevent their discovery by Fitzgerald, the client for whom they were prepared, and I will order Blank Rome to produce them to him.[50]

Blank Rome has withheld the documents in category (5) as protected work product. Two of these documents, however, BSX0010520 and BPX7503785, were turned over to FSLIC, so that their work product protection has been waived.[51] Fitzgerald contends he should receive the remaining documents in this category because he had access to them while he was a partner at Blank Rome, and because they concern him and his work as an attorney for Sunrise. Fitzgerald cites no authority to support his contentions, and Blank Rome cites no opposing authority.

Considerations of fairness favor production of those documents prepared while Fitzgerald was a partner at Blank Rome.[52] Current Blank Rome partners who are defendants in this litigation have had access to these documents in preparing their defense, even those named as individual defendants with interests potentially adverse to Blank Rome.[53] While a Blank Rome partner, Fitzgerald was entitled to review those documents in existence at that time in preparing his defense; he should not be penalized in preparing his defense to charges he faces solely in his capacity as a former Blank Rome partner merely because he is not currently a Blank Rome partner and failed to review the documents while he was a partner. Moreover, as discussed above, disclosure of these documents to Fitzgerald will not waive Blank Rome's work product protection as to third parties.

On the other hand, Fitzgerald has no such equitable claim to documents prepared after he left Blank Rome; he never has been entitled to review such documents. If courts accepted Fitzgerald's contention that the work product doctrine does not prevent compelling production to a party of documents "inherently concerned with" that party, the work product doctrine would be swallowed up by exceptions. I therefore will order Blank Rome to produce to Fitzgerald only those documents in category (5) which were either turned over to FSLIC or prepared before Fitzgerald left Blank Rome.

VII. *Foxman, Treadwell, Gitomer, Gruher, Hyman, Frame, Felps, Keiser, Jacobs, Logsdon, Siemon, Greenberg, and Lytal—Tax Returns and Personal Financial Information*

█ FSLIC has moved to compel defendants Foxman, Treadwell, Gitomer, Gruher, Michael Hyman, William Frame,[54] Lynn

---

50. Because I will order production of these documents based on Fitzgerald's unique position as client, Blank Rome is to produce these documents to Fitzgerald alone. The availability of these documents to other parties is discussed *supra,* in Section I.

51. Blank Rome admits that two documents in category (5) were turned over to FSLIC, but fails to identify which documents they are. Response of Blank Rome to Fitzgerald's Motion to Compel Production of Documents, at 5–6. Of the documents in this category, only BSX0010520 and BPX7503785 do not appear in either the list of "Attorney Work Product Related to Grand Jury" or the list of "Attorney Work Product Documents Withheld from FSLIC" submitted by Blank Rome. Response of Blank Rome to Certain Defendants' Amended Motion, Exhibits B and C. Only these two groups of work product documents were withheld by Blank Rome from FSLIC.

52. Documents prepared before Fitzgerald left Blank Rome include: BPX7002237, BSX0008031, BSX0010644, and BSX0010837. BPX7503785 also was prepared before Fitzgerald left, but its work product protection was waived when it was turned over to FSLIC.

53. *See* Memorandum of Law in Support of Fitzgerald's Motion to Compel Discovery from Blank Rome, Exhibit B (letter from Blank Rome's counsel stating that "[i]n view of Mr. Foxman's status as a current partner of Blank, Rome, we believe that he, or his counsel, is entitled to review any document within the Blank, Rome collection.")

54. According to FSLIC, Frame agreed to produce his financial and tax records. FSLIC's Reply Relating to Common Issues, at 4, n. 2; at 7–8, n. 7. Since FSLIC has not withdrawn its motion to compel Frame, I assume that Frame has not produced these documents.

S. Felps, Keiser, Jacobs, Logsdon, Siemon, Greenberg, and Lytal ("objecting defendants") to produce personal financial information, including all state and federal tax returns they filed from 1980 to the present.[55] The objecting defendants have withheld the requested tax returns and/or other personal financial information, contending that they are irrelevant, confidential, and contain information obtainable elsewhere.

Generally, "public policy favors the nondisclosure of income tax returns." *DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir.1982). But because "[i]ncome tax returns may be the best source of complete and competent information as to a party's income," they may be discovered "in appropriate circumstances." *In re Reading Tube Corp.*, 73 B.R. 99, 101 (Bkrtcy.E.D.Pa.1987). The Court must balance a party's legitimate privacy interest in his or her tax returns against "a number of factors, including [the moving party]'s need for the information, its materiality, and its relevance." *DeMasi*, 669 F.2d at 120. The District Court for the Eastern District of New York recently adopted a two-part test balancing these factors when discovery of tax returns is sought:

> First, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable. While the party seeking discovery of the tax returns bears the burden of establishing relevance, the party resisting disclosure should bear the burden of establishing alternative sources for the information.

*United States v. Bonanno Organized Crime Family*, 119 F.R.D. 625, 627 (E.D. N.Y.1988) (citations omitted).

I find that any financial information relating to income derived from Sunrise is discoverable under the *Bonanno* test. FSLIC has alleged that the objecting defendants breached their fiduciary duties to Sunrise, and information about their Sunrise income would be relevant to this issue, particularly to FSLIC's allegation that Sunrise adopted a system of "incentives to approve, recommend, originate or underwrite loans detrimental to the well-being of Sunrise but advantageous to the individuals involved in violation of those individuals' fiduciary duties owed to Sunrise." FSLIC's Memorandum of Points and Authorities Relating to Common Issues, at 10. Although some information about the objecting defendants' Sunrise income might be available from Sunrise records,[56] FSLIC's hardship in ferreting out this information from the Sunrise records would be much greater than the hardship to the objecting defendants in producing their own records of Sunrise compensation. Moreover, the Protective Order Governing Pretrial Discovery ("Protective Order") entered by consent of the parties on July 17, 1986 [57] will adequately protect the defendants' legitimate privacy interests in this information.

But FSLIC's request for information concerning all of the objecting defendants' sources of income from 1980 to the present is so broad that it is nothing less than a "fishing expedition." FSLIC argues that evidence of income received by the objecting defendants both from Sunrise and from other sources is relevant to the alleged breaches of fiduciary duty because "such

---

55. FSLIC's Requests for Production of Documents directed to each of the objecting defendants sought, among other items: "[a]ll documents referring or relating to benefits, salary or other earnings received from Sunrise, including but not limited to W–2 forms, federal and state income tax returns and financial statements;" and "[a]ll state and federal tax returns filed by you or on your behalf for the period 1980 to present." FSLIC's Memorandum of Points and Authorities Relating to Common Issues, at 5–6, n. 1.

56. FSLIC states that "given the incompleteness of Sunrise's files, it is not at all clear that FSLIC can obtain complete information even with respect to the defendants' Sunrise compensation." FSLIC's Reply Relating to Common Issues, at 5, n. 4.

57. The Protective Order was amended on March 17, 1987, and on May 14, 1987.

information could provide evidence of further violations of their various fiduciary duties, the existence of conflicts of interest through the disclosure of a financial interest in a borrower, ..., and that officers received monetary gifts or bribes from borrowers." FSLIC's Memorandum of Points and Authorities Relating to Common Issues, at 10. FSLIC's purported explanation of relevance is no more than an expression of hope. FSLIC's allegations of breaches of fiduciary duties do not warrant production of any document or information that conceivably could contain evidence of breaches of fiduciary duties. FSLIC has not attempted to tailor its request to specific alleged misdeeds, or even to the time during which the objecting defendants owed fiduciary duties to Sunrise.

As a result, I will grant FSLIC's motions only insofar as they seek information concerning the objecting defendants' income derived from Sunrise.

## VIII. *DHS—Documents Withheld as Confidential, Irrelevant or Privileged*

FSLIC and the Outside Directors have moved to compel DHS to produce three categories of withheld documents: documents regarding DHS's policies and procedures governing audits of savings and loan associations; documents regarding the performance and experience of DHS personnel who supervised or performed audits of Sunrise; and documents generated after January 12, 1986, the date upon which DHS's services to New Sunrise were formally concluded.[58]

DHS has withheld the first category of documents, those regarding its policies and procedures governing audits of savings and

loan associations, as confidential, but has stated that it is willing to produce these documents subject to a disclosure requirement in addition to those mandated by this Court's Protective Order. The present Protective Order requires that any person, other than an attorney or a member of a legal support staff, who reviews materials designated confidential must sign a written assurance that he or she will not divulge, copy or use the materials other than as authorized for the purposes of this litigation.[59] Accordingly, all accounting experts hired by the parties currently are required to sign the written assurance set forth in the Protective Order. DHS seeks to impose an additional requirement that "before it produces this material, all parties employing an expert furnish, twenty days before production, the signed written assurance of its accounting expert." Memorandum of Law of DHS in Opposition to Motions to Compel Production of Documents, at 16.

DHS does not dispute the moving parties' contention that this requirement would not permit disclosure of these documents to any party's counsel until twenty days after every accountant who may review the documents for any party has signed a written assurance. DHS argues this additional requirement is necessary because "[i]t would be extremely damaging and unfair to DHS if it were to learn—after the fact—that its proprietary materials had been widely distributed in a manner arguably consistent with the letter of the Protective Order, but in violation of its purpose and intent." Memorandum of Law of DHS in Opposition to Motions to Compel Production of Documents, at 16. While this argument may explain the need for a twenty day waiting period between the

**58.** FSLIC has withdrawn its motion to compel the post-January 12, 1986 documents. FSLIC's Reply to DHS's Opposition to Motions to Compel the Production of Documents, at 3.

**59.** ¶ 9 of the Protective Order provides: "With the exception of attorneys of record, defendants' in-house counsel, attorneys for defendants' insurance carriers, and legal support personnel regularly employed by such attorneys or defendants, any person to whom 'Confidential' discovery material is to be disclosed shall sign a

written assurance in the following form...." A signer of the written assurance pledges, among other things, that "I am fully familiar with and agree to comply with and be bound by the provisions of [the Protective Order]; and that I will not divulge to persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of these actions, any discovery material obtained pursuant to said Order except as expressly permitted by the Court."

written assurances of a party's experts and production of documents to that party's experts or attorneys, it does not explain why any particular party's experts or attorneys must wait to review the documents until every party has designated its own experts.

A reasonable compromise would allow any party's attorneys or accounting experts to review these documents twenty days after that party's designated accounting experts have signed written assurances. Counsel will be directed to confer and to submit an appropriate amendment to the Protective Order so providing.

DHS contends that the second group of documents withheld, documents regarding the performance and experience of DHS personnel who supervised or performed audits of Sunrise, are confidential and irrelevant to this litigation. The moving parties argue that these documents are relevant and that the Protective Order provides sufficient protection to any confidential information sought.

Strong public policy exists against disclosure of the personnel records sought by the moving parties because disclosure would invade DHS employees' privacy, and "firms might cease to frankly criticize and rate their own performance, for fear that any written evaluations they make might be used against them or their employees in a lawsuit." *New York Stock Exchange, Inc. v. Sloan*, 22 F.R.Serv.2d 500, 503 (S.D.N.Y. 1976). As with income tax returns, discovery of personnel records is permissible "if (1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." *Matter of Hawaii Corp.*, 88 F.R.D. at 524 (citing *Sloan*, 22 F.R.Serv.2d at 505).

The moving parties claim that the personnel records are clearly relevant to the allegations of negligence and wrongdoing by DHS in this litigation. Any connection, however, between these records and the allegations of negligently conducted audits, fraud and conspiracy is speculative. *See Sloan*, 22 F.R.Serv.2d at 502 (holding that personnel records were irrelevant to allegations of negligently conducted audits because they concerned only what "management thought of the employees it assigned to the audit.").[60] The one allegation to which the personnel records might be relevant, FSLIC's allegation that DHS acted negligently in "planning" and "staffing" its audits,[61] is too general to make clearly relevant all available information about the employees who conducted the audits. As discussed above,[62] general allegations of wrongdoing do not, standing alone, open the season for fishing expeditions.

For DHS's personnel records to be clearly relevant, the moving parties must make specific allegations or some initial showing, based on deposition testimony or other evidence, that DHS acted negligently in using particular employees on the Sunrise audits. Because no such showing or specific allegation has been made at present, I will not compel production of the DHS personnel documents.

DHS asserts that the third group of withheld documents, documents generated by DHS after January 12, 1986, are privileged because they were all prepared for the use and benefit of counsel representing DHS in litigation. Because neither FSLIC nor the Outside Directors contests this assertion,[63] I will not compel production of these documents.

---

**60.** To the extent that *Sloan* conflicts with *Hawaii*, I find the reasoning of *Sloan* more persuasive. Permitting wide-ranging discovery of confidential personnel files based on general allegations of misconduct encourages litigants to make their pleadings as general as possible, and undermines parties' legitimate confidentiality concerns.

**61.** FSLIC First Amended Complaint, ¶ 295.

**62.** *See supra,* discussion in Section VII.

**63.** As noted above, FSLIC withdrew its motion seeking this group of documents. In their Reply Memorandum, filed in response to the Memorandum in which DHS asserted that these documents were privileged, the Outside Directors do not even mention these documents, let alone contest the applicability of privileges.

## IX. William Frame—Documents Referring or Relating to Ron Frame and Document FRM 4564–4751

 FSLIC seeks to compel production by William Frame of documents referring or relating to his brother Ron Frame, as well as document FRM 4564–4751.[64] Although Frame has not filed any opposition to FSLIC's motion, in his response to FSLIC's Request for Documents he stated that FSLIC's requests for the Ron Frame documents were "overbroad and not reasonably calculated to lead to the discovery of admissible evidence," and claimed that document FRM 4564–4751 is protected by "Grand Jury Rule 6 Work Product Attorney–Client Privilege." Memorandum in Support of FSLIC's Motion to Compel Production of Documents by William Frame, at 2–3.

FSLIC argues that the requested documents referring or relating to Ron Frame are relevant to the allegation that William Frame breached his fiduciary duty to Sunrise. FSLIC claims that "Ron Frame received substantial brokerage commissions for loans made by Sunrise to borrowers," and that "certain would-be borrowers were told that the only way they could obtain a loan from Sunrise was to use Ron Frame as their broker." Memorandum in Support of FSLIC's Motion to Compel Production of Documents by William Frame, at 2. Because those requested documents which referred or related to both Ron Frame and Sunrise would be highly relevant to these claims, and therefore to William Frame's alleged breach of fiduciary duty,[65] I will compel William Frame to produce them.

But FSLIC's requests also encompass correspondence between William and Ron Frame which may concern separate business or personal matters having no relationship to the issues in this litigation. I therefore will order William Frame to submit those documents responsive to FSLIC's request which do not refer or relate to Sunrise to the Special Master, whom I will ask to review the documents and to order production of those relevant or reasonably calculated to lead to evidence relevant to William Frame's alleged breach of fiduciary duty.

William Frame has not described document FRM 4564–4751 or otherwise substantiated his claim of privileges for this document, but he has stated that "this document's description will be presented to Judge O'Neill *ex parte* upon request." Memorandum in Support of FSLIC's Motion to Compel Production of Documents by William Frame, at 4. Because FSLIC challenges the applicability of these privileges, I will order Frame to submit this document to the Special Master, who will order production of this document unless he determines that a claimed privilege applies.

## X. Jacoby—Documents Related to Crusader Savings & Loan or Created After Jacoby Left Sunrise

Defendant Robert Jacoby has withheld two categories of documents sought by FSLIC: documents relating to Crusader Savings and Loan Association of Rosemont, Pennsylvania ("Crusader"); and documents created after Jacoby left Sunrise. FSLIC claims that relationships[66] and

---

**64.** FSLIC also claims in its Memorandum of Points and Authorities Relating to Common Issues that William Frame withheld documents based on a "time frame" objection. In its motion to compel Frame, however, FSLIC does not seek documents, or state that documents have been withheld, based on a "time frame" objection. Nor was William Frame mentioned in FSLIC's discussion of documents withheld under "time frame" objections in its Reply Relating to Common Issues. I therefore assume that the references to Frame's "time frame" objection were inadvertent, and will not address them.

**65.** *See e.g.,* FSLIC First Amended Complaint, ¶ 52 (alleging that "[w]ith Frame's knowledge

his brother, Ron Frame, on information and belief, received significant loan brokerage fees from Sunrise loan proceeds for work he did not perform"); ¶ 165 (alleging that in relation to a loan to Ambassador World Enterprises, Inc. for purchase of condominium units at Treasure Cove Dunes, "Frame arranged for his brother to be the broker on th[e] loan and to receive a 1% brokerage commission with the knowledge and acquiescence of the Loan Committee, even though Ron Frame performed little or no brokerage service.")

**66.** FSLIC alleges in its Memorandum that "defendant law firm [Blank Rome] arranged the original business relationship between Old Sun-

transactions between Crusader, Sunrise and Blank Rome, including advising, a planned merger, and loan sales,[67] make the Crusader documents relevant to, or reasonably calculated to lead to evidence relevant to, the allegations against Blank Rome and the director and officer defendants. Jacoby contends that these documents are irrelevant because "only those documents which relate to loan administration or underwriting are producible." Defendant Jacoby's Response to FSLIC's Motion to Compel Production of Documents, at 4.

Jacoby correctly states that FSLIC's allegations of negligence and breaches of fiduciary duties by the defendant officers and directors relate to loan administration and underwriting; these allegations, however, are specifically "not limited to the examples [of loans] outlined in the Complaint."[68] Moreover, FSLIC alleges negligence, breach of contract, aiding and abetting violations of fiduciary duties, and conflict of interest by Blank Rome in connection with loan closings and advice to Sunrise.[69] Because it is not apparent from the descriptions before this Court whether any or all of the Crusader documents are relevant to these allegations, I will ask the Special Master to review the documents and to order their production if he determines, in light of the allegations of FSLIC's First Amended Complaint, that they are discoverable under Rule 26(b)(1).

Of the second group of documents sought by FSLIC, documents created after Jacoby left Sunrise, Jacoby has withheld "only those documents created after his departure from Sunrise that do not concern activities which occurred at Sunrise during his employment; documents relating to the operations of Sunrise during Jacoby's employment, regardless of when created, have been produced." Defendant Jacoby's Response to FSLIC's Motion to Compel Production of Documents, at 8. FSLIC correctly argues that relevant documents must be produced regardless of their date of preparation,[70] but presents no theory of relevance for documents Jacoby created after he left Sunrise which do not concern activities at Sunrise during his employment. I therefore will not compel production of these documents.

### XI. Taber—Attorney Client Privilege, Work Product and Joint Defense Privilege Documents

■ Robert Jacoby has moved to compel production of seven memoranda prepared by Taber in June, 1985, while he was Executive Vice President and acting president of Sunrise. At that time, a federal grand jury was investigating certain individual Sunrise borrowers and their transactions with Sunrise. Pursuant to the advice of his personal counsel Bruce Wagner, and of Sunrise's counsel regarding the grand jury investigation, Rebekah Poston,[71] Taber

rise and Crusader, both of which were clients of Blank Rome. As one condition of the business relationship, Crusader fired several members of its Board of Directors and elected as a member of its board Michael D. Foxman, a Blank Rome partner as well as a member of Old Sunrise's Board of Directors." Memorandum in Support of FSLIC's Motion to Compel Production of Documents by Robert Jacoby, at 2. See FSLIC First Amended Complaint, ¶ 61.

**67.** FSLIC alleges that in early 1982, "[b]ecause Crusader was experiencing financial trouble, Old Sunrise was brought in to suggest and implement 'management techniques' that would make Crusader profitable. Shortly afterward, the business relationship progressed to the point where Old Sunrise was planning to merge with Crusader. Subsequently, after the merger plans had fallen through, Old Sunrise and Crusader entered into a 'correspondent relationship.' As part of that relationship, the two thrifts bought

and sold millions of dollars of loans from each other." Memorandum in Support of FSLIC's Motion to Compel Production of Documents by Robert Jacoby, at 2.

**68.** FSLIC First Amended Complaint, ¶ 264 (Count I), ¶ 266 (Count II).

**69.** See FSLIC First Amended Complaint, ¶¶ 271–280.

**70.** See supra, discussion in Section V.

**71.** In her affidavit, Poston states that Old Sunrise retained her law firm Fine, Jacobson "[i]n the spring of 1985 ... in connection with a federal grand jury investigation concerning certain individuals and their activities regarding transactions related to Sunrise." Taber's Memorandum of Law in Opposition to Jacoby's Motion to Compel, Exhibit B (Poston Affidavit), at 1–2.

prepared these memoranda "in order to create a record of [his] communications with any potential targets of the federal grand jury investigation ... to protect [himself] from any potential criminal proceedings." Taber's Memorandum of Law in Opposition to Jacoby's Motion to Compel, Exhibit A (Taber Affidavit), at 1. Taber has withheld the memoranda as protected by the attorney client, work product and joint defense privileges.

On the present record, I find that work product protection applies to these documents.[72] Taber has documented by affidavits his claim that he prepared the memoranda in anticipation of the grand jury proceedings.[73] Jacoby argues that the memoranda are not protected because they were prepared in anticipation of the grand jury proceedings, not in anticipation of this litigation. But work product prepared in anticipation of one action are protected in a subsequent action "where both actions were proceeding at the same time and both involved the identical subject matter." *In re Grand Jury Investigation*, 557 F.Supp. 1053, 1057 (E.D.Pa.1983) (citing *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 803 (3d Cir.1979)). As Taber notes, the original complaints underlying this litigation "were filed during the time in which the grand jury investigation was proceeding and prior to the time that any indictments were issued by the grand jury." Taber's Memorandum of Law in Opposition to Jacoby's Motion to Compel, at 10. In addition, both the grand jury investigation and the present litigation concern relationships and transactions between certain borrowers and Sunrise.[74]

Jacoby also argues that Taber waived work product protection by disclosing the documents to Poston and defendant Treadwell, Sunrise's in-house corporate counsel. Yet none of the three factors identified in *In re Subpoenas Duces Tecum*, 738 F.2d at 1372,[75] as important in determining whether work product protection has been waived are present here. Taber did not disclose the memoranda to adversaries, but to counsel for Sunrise, which had interests in common with Taber regarding the grand jury investigation. *See In re Doe*, 662 F.2d at 1081. Taber disclosed the memoranda under an understanding of confidentiality and of pursuing a joint defense, and therefore had a reasonable basis for believing that Poston and Treadwell would keep the materials confidential.[76] Finally, no policy inherent in the work product privilege mandates waiver under the circumstances of Taber's disclosure.

Jacoby does not contend that he has substantial need of the Taber memoranda, that he cannot obtain the substantial equivalent without undue hardship, or that they contain information directly at issue in this litigation. As a result, I will not compel production of the memoranda.

## XII. Treadwell, Devaney, Gitomer—Attorney Client Privilege and Work Product Documents

FSLIC has filed motions to compel production of documents withheld by Treadwell, Devaney and Gitomer under individual claims of attorney client privilege and/or work product protection.[77] In his response

---

**72.** As a result, I need not consider whether the documents are protected by the attorney client or joint defense privileges.

**73.** *See* Taber's Memorandum of Law in Opposition to Jacoby's Motion to Compel, Exhibit A (Taber Affidavit), at 1–2; Exhibit B (Poston Affidavit), at 3–5; Exhibit C (Wagner Affidavit), at 2–3.

**74.** Jacoby cites no authority in support of his contention that any work product protection for documents prepared in anticipation of a grand jury investigation is lifted because the investigation anticipated is no longer real and substantial, or because Taber has been granted immunity under 18 U.S.C. § 6001 *et seq.*

**75.** *See supra*, discussion in Section I.

**76.** *See* Taber's Memorandum of Law in Opposition to Jacoby's Motion to Compel, Exhibit A (Taber Affidavit), at 3; Exhibit B (Poston Affidavit), at 3, 5; Exhibit C (Wagner Affidavit), at 2–3.

**77.** FSLIC moved to compel production by Treadwell of "documents withheld under his claim of attorney-client privilege for documents created during his tenure as in-house counsel for Sunrise." From Devaney, FSLIC sought "documents created by or for David L. Devaney in his capacity as an officer or employee of Sunrise." FSLIC sought to compel from Gitom-

to FSLIC's motion, Treadwell states that he will produce certain requested documents, but withhold two groups of documents under the attorney client privilege and work product protection: notes of interviews of various individuals taken by Rebekah Poston in connection with her representation of Treadwell individually, Sunrise and/or New Sunrise;[78] and notes taken by Treadwell as part of an investigation he conducted on his own behalf to assist Rebekah Poston in his defense. Similarly, Devaney states in his response that certain documents sought by FSLIC "were prepared within the context of Devaney's attorney-client relationship with Marsha Lyons, Esquire." Memorandum of Devaney in Opposition to FSLIC's Motion to Compel, at 2. Gitomer also withholds documents under claims of individual attorney client privilege and work product protection.[79]

Although FSLIC contended in the memoranda supporting its motions to compel production by Treadwell and Devaney that any

privileges attached to these documents belong to Sunrise (and therefore to FSLIC), and not to Treadwell and Devaney individually, FSLIC apparently has abandoned this contention.[80]

In addition, FSLIC has not contested Gitomer's assertion of individual attorney client privilege.[81] As a result, I will not compel production of documents withheld by Treadwell, Devaney or Gitomer under assertions of individual attorney client privilege. If FSLIC did not intend to abandon its contentions regarding these documents, it may file another motion to compel stating its argument why the claimed privileges belong to FSLIC, and not to Treadwell, Devaney or Gitomer.

## XIII. FSLIC, Beach, AmeriFirst, FADA, FHLB–A—Motions to Compel, to Enforce Subpoenas, and for Sanctions

All defendants except the Blank Rome Defendants[82] have moved to compel pro-

---

er "[d]ocuments created or amassed during the course of Gitomer's association with [Old Sunrise] as a director of Sunrise or during the course of his representation of Sunrise as an attorney with [Blank Rome]."

This Section's discussion does not concern the JFGD joint venture documents, which are discussed *supra,* in Section III.

**78.** As noted above in Section XI, Poston was retained by Old Sunrise in spring 1985 in connection with a grand jury investigation. Treadwell claims that he retained Poston to represent him individually in July 1985. Memorandum of Law in Opposition to Motion to Compel Production of Documents by Treadwell, Exhibit A (Treadwell Affidavit), at 1.

**79.** Specifically, Gitomer claims that documents requested in FSLIC document requests 5, 6, 7, 8 and 10 are subject to Gitomer's personal attorney client privilege and work product protection.

Gitomer also asserts that various individual requests encompassed in FSLIC's motion should be denied on the bases of form, vagueness, and overbreadth; I disagree with these objections, however, and overrule them.

**80.** In its reply to Treadwell's opposition, FSLIC states that the remaining dispute between FSLIC and Treadwell concerns only three categories of documents originally sought by FSLIC: (1) internal Blank Rome "business" documents; (2)

financial information and tax returns; and (3) documents created or amassed by Treadwell during the course of his representation of Sunrise. Treadwell during the course of his representation of Sunrise. FSLIC's contentions regarding the documents in categories (1) and (3) are discussed *supra* in Section I, while those regarding category (2) are discussed in Section VII. FSLIC's reply does not discuss or mention the documents Treadwell withheld on the basis of individual privilege claims.

FSLIC's only response to Devaney was the discussion in its Reply Relating to Common Issues regarding the JFGD joint venture.

**81.** *See* Memorandum in Support of FSLIC's Motion to Compel Production of Documents by Gitomer, at 2; FSLIC's Reply to Gitomer's Objection to FSLIC's Motion to Compel Production of Documents, at 1–3.

**82.** Defendants' Reply Brief in Support of Their Motions to Compel Production of Documents by FSLIC, FHLB–A, FADA, AmeriFirst and Beach, at 1, n. 1. Some of the defendants have joined the motions only in part. DHS does not move as to AmeriFirst. Devaney does not move as to Beach. Skubal does not move as to FADA, Beach or AmeriFirst. Kenneth Howard and Koushel seek only documents related to loans with which FSLIC alleges they were involved, and Gruher seeks only documents related to loans with which FSLIC alleges he was involved.

duction of documents by FSLIC, and to enforce subpoenas *duces tecum* issued at the request of Blank Rome to Beach Federal Savings and Loan Association ("Beach"), AmeriFirst Federal Savings and Loan Association ("AmeriFirst") and the Federal Asset Disposition Association ("FADA") in December 1986 for depositions scheduled in January 1987, and to the Federal Home Loan Bank of Atlanta ("FHLB–A") in May 1987 for a deposition scheduled in June 1987. The documents sought include: loan and work-out documents generated after Sunrise went into receivership on July 18, 1985 relating to current unresolved "on-going negotiations" to collect on loans or to foreclose and sell the property securing loans; documents relating to collection litigation since Sunrise went into receivership; and documents relating to the pre-receivership examination, regulation and supervision of Sunrise by FSLIC and the Federal Home Loan Bank Board. The moving defendants [83] also have moved for imposition of sanctions against FSLIC for producing documents without the "brief description by file (or other unit)" required by Section V, Paragraph G of Pretrial Order No. 5 (entered March 16, 1987).

FSLIC argues that these motions should be denied for a variety of reasons. It contends that this Court either cannot or should not enforce subpoenas issued by other District Courts against non-parties to this litigation. It argues that the documents sought by the moving defendants are irrelevant, unduly burdensome to produce and/or highly confidential and sensitive. And although it admits failing to submit a description of produced documents, FSLIC maintains that the parties

reached an understanding waiving this requirement in exchange for accelerated production.

The subpoenas in question were issued to Beach and AmeriFirst by the U.S. District Court for the Southern District of Florida, and to FADA and FHLB–A by the U.S. District Court for the Northern District of Georgia. FSLIC does not argue that the Florida and Georgia Courts could not issue the subpoenas, but rather that only those Courts may enforce their subpoenas under F.R.C.P.Rules 37 and 45.[84] FSLIC concludes that "this Court is not empowered to hail non-resident non-parties into this Court and order them to produce documents demanded by subpoenas issued by foreign district courts." [85]

The Judicial Panel on Multidistrict Litigation consolidated the Sunrise actions filed in the Eastern District of Pennsylvania and the Southern District of Florida in this District for "centralized pretrial proceedings" under 28 U.S.C. § 1407. Docket No. 655 Transfer Order, Judicial Panel on Multidistrict Litigation, December 10, 1985. Section 1407(b) provides that "[t]he judge or judges to whom such actions are assigned ... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." Under this section, as the Court of Appeals for the District of Columbia Circuit observed in *In re Corrugated Container Antitrust Litigation*, 662 F.2d 875 (D.C.Cir.1981),

[t]he deposition proceedings remain anchored in the courts of the districts where they are being conducted, but be-

---

**83.** DHS, Skubal, Kenneth Howard, Koushel and Gruher do not join in the motion for sanctions.

**84.** Rule 45(d)(1) states that when the subpoenaed party has filed written objections, as did Beach, AmeriFirst, FADA and FHLB–A, "the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to an order of the court from which the subpoena was issued."

In addition, Rule 37(a)(1) provides that "[a]n application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken." Under Rule 45(d)(2), "[a] person to whom a

subpoena for the taking of a deposition is directed may be required to attend at any place within 100 miles from the place where that person resides, is employed or transacts business in person, or is served, or at such other convenient place as is fixed by an order of the court." The Beach and AmeriFirst subpoenas were served in Florida, and the FADA and FHLB–A subpoenas in Georgia.

**85.** Opposition of the FSLIC to the Motions to Enforce Subpoenas Served on Beach, AmeriFirst and FADA, at 9.

cause of the obvious policy reasons for allowing a single judge to preside over the disparate activity in a multidistrict case, the multidistrict judge is granted the same powers as a judge of those courts where the depositions are being taken. 662 F.2d at 880–881 (citations omitted)

Section 1407(b) does not authorize this Court to "reach out, assert jurisdiction, and compel the non-party disputants to the out-of-district controversy to appear initially in this district." *In re Uranium Antitrust Litigation*, 503 F.Supp. 33, 35 (N.D.Ill. 1980). But it does authorize a multidistrict judge to "go to other districts to hear and decide motions to compel discovery from non-parties." 503 F.Supp. at 35. *See also In re IBM Peripheral EDP Devices Antitrust Litigation*, 411 F.Supp. 791, 792 (J.P. M.L.1976) (holding that § 1407(b) "plainly and clearly empowers a transferee judge to preside at depositions in any federal district without the specific authorization of the Panel" on Multidistrict Litigation).

So, for example, when the Corrugated Container Antitrust Litigation was consolidated for pretrial proceedings in the Southern District of Texas before Judge Singleton, he invoked § 1407(b) to preside over depositions in several other districts by telephone from Texas. Judge Singleton thus exercised "the powers of a district judge of the District Court for the Southern District of New York" to "compel Fleischacker, a non-party deponent, to answer questions at a deposition conducted in the Southern District of New York," and to hold him in contempt for refusing to answer. *In re Corrugated Container Anti-Trust Litigation*, 620 F.2d 1086, 1090–1091 (5th Cir.1980), *reh. denied*, 625 F.2d 1016 (5th Cir.1980), *cert. denied sub nom. Adams Extract Co. v. Franey*, 449 U.S.

1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981). Similarly, Judge Singleton exercised "the powers of the District Court for the District of Columbia" to compel a deponent to answer questions at a deposition in Washington, D.C., and to hold that deponent in contempt for refusing to answer. *In re Corrugated Container Antitrust Litigation*, 662 F.2d at 878–881. And Judge Singleton exercised his power under § 1407(b) "to sit as a district judge in Illinois" to compel deposition testimony of a third deponent in Chicago, and to hold him in contempt for refusing to answer. *In re Corrugated Container Antitrust Litigation*, 661 F.2d 1145, 1147–1148 (7th Cir.1981), *affirmed sub nom. Pillsbury Co. et al. v. Conboy*, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983).

Thus, a multidistrict judge may decide a motion to compel a non-party in other districts even if he or she is not physically situated in those districts. Therefore, in this litigation I may, pursuant to § 1407(b), exercise the powers of the U.S. District Courts for the Southern District of Florida and the Northern District of Georgia to enforce the subpoenas issued by those Courts against Beach, AmeriFirst, FADA and FHLB–A.[86] These non-parties are entitled, however, to produce documents in the districts within which they are situated. The moving defendants and the non-parties are encouraged to agree to an appropriate procedure for copying and review of those documents whose production is required herein. The Special Master will be asked to assist in this effort.

The first group of documents sought by the moving defendants consists of loan and work-out documents generated after Sunrise went into receivership. FSLIC has produced all post-receivership loan and work-out documents in its possession except for those relating to "on-going work-

---

86. FSLIC also argues that the moving defendants failed to confer with counsel for Beach, AmeriFirst or FADA before filing their motions to enforce the subpoenas, and therefore did not comply with Local Rule 24(f). But Rule 24(f) specifically applies to "parties," while Beach, AmeriFirst and FADA are all non-parties to this litigation. Moreover, this requirement may be waived at the Court's discretion. This dispute is not one in which the opposing sides have never

revealed their positions or negotiated, since Beach, AmeriFirst and FADA all filed written objections to the subpoena, and AmeriFirst and FADA subsequently informally produced thousands of subpoenaed documents to Blank Rome. As a result, regardless of whether Rule 24(f)'s literal requirements were satisfied here, the discussion and negotiation which the Rule was intended to promote occurred before the motions were filed.

out or sale negotiations that currently are unresolved and not finalized." Opposition of FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 13. FADA has produced all its post-receivership loan and work-out documents generated prior to January 1, 1987 [87] except for those relating to "on-going negotiations." Beach has offered to produce its post-receivership loan servicing documents,[88] and the post-receivership files it had stored for FSLIC have been produced by FSLIC. AmeriFirst and FHLB–A apparently do not possess any documents in this category.[89]

FSLIC offers three grounds for withholding the "on-going negotiations" documents. It contends that these documents are irrelevant to the issues in this litigation,[90] that they would be unduly burdensome to collect and produce,[91] and that they contain extremely sensitive information the production of which "would hinder the assets manager's ability to dispose of the property." [92] The moving defendants argue that these documents are relevant to a number of issues,[93] and that the Protective Order will adequately protect any sensitive

---

87. This cut-off date was selected because it came "approximately one month after [FADA] was served with the third party subpoena." Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 10. FSLIC offers no explanation why FADA limited its voluntary production to documents generated before this date while FSLIC, which was served a subpoena several days before FADA and was represented by the same counsel as FADA respecting the subpoenas, apparently has not limited its production to documents before this date. *See* Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 7–10. Neither FSLIC nor FADA has offered any reason why documents generated after this date need not be produced under the subpoena. I therefore will exercise the power of the U.S. District Court for the Northern District of Georgia under § 1407(b) to enforce the subpoena and compel FADA to produce all subpoenaed documents generated on or after January 1, 1987 which do not concern "on-going negotiations." Those FADA documents which do concern "on-going negotiations" will be treated as discussed below.

88. Neither FSLIC nor Beach has offered any reason why these documents should not be produced, so I will exercise the power of the U.S. District Court for the Southern District of Florida under § 1407(b) to enforce the subpoena and compel Beach to produce the post-receivership loan servicing documents.

89. *See* Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 10.

90. FSLIC argues that the documents are irrelevant because: they are relevant only to counterclaims previously dismissed by this Court alleging that FSLIC contributed to and failed to mitigate losses; FSLIC has already produced information concerning how or why loans were made, the performance of loans and the factual basis for FSLIC's claims of negligence as to making loans, as well as identifying people or

documents providing further information; damages in this case cannot be reduced by any failure to mitigate by FSLIC; the discrepancy between FSLIC's estimates of Sunrise's losses and Sunrise's booked losses is due to the artificially low loss figure booked by Sunrise, not losses occurring subsequent to Sunrise's receivership; and information about loans being renegotiated, sold or liquidated cannot reflect final salvage value. Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 17–28; FSLIC's Supplemental Memorandum in Opposition to the Motions to Compel Production of Documents Filed by DHS and the Outside Directors, at 2–6.

91. According to FSLIC, the "work-outs are being handled by numerous asset managers and subcontractors around the country" and new documents "are being generated every day." Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 14.

92. Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 27.

93. The moving defendants assert that the documents: "may reflect acts by former Sunrise officers during the pre-receivership period which constitute a defense as to some or all of the defendants"; "may show that some or all defendants met their duties of care in the pre-receivership period"; "may show that persons other than FSLIC or the defendants caused the losses sued for here"; "may show that FSLIC, AmeriFirst or FADA caused the losses"; or "may bear on the amount, and appropriate measure, of damages." Defendants' Further Supplemental Reply Brief in Support of Their Motion to Compel Production of Documents by FSLIC, at 1–2. *See also* Defendants' Opening Brief in Support of Their Motions to Compel, at 19–27; Defendants' Reply Brief in Support of Their Motions to Compel, at 7–10.

information.[94]

Both FSLIC's and the moving defendants' arguments have some merit. On-going work-out documents may be relevant, or may be reasonably calculated to lead to evidence that is relevant, to a number of issues in this litigation, including: whether defenses exist relating to pre-receivership acts by former Sunrise officials; whether the defendants met their duties of care; and whether persons other than FSLIC or the defendants caused any of Sunrise's losses.[95] But collection and production of these documents, more of which are generated each day all over the country, would likely prove burdensome to FSLIC and FADA.

Review of a representative sample of these documents may prove helpful in striking a balance between the interests in production of relevant information and in avoiding burdensome production, and may be the only way to determine whether the Protective Order will adequately protect sensitive information in these documents. I therefore will ask the Special Master to review a representative sample of the ongoing work-out documents [96] to determine if a reasonable accommodation between relevance and burdensomeness can be drawn, and whether the Protective Order offers sufficient protection of the documents.

The second group of documents sought by the moving defendants consists of litigation files compiled by FSLIC in suits arising out of Sunrise since Sunrise entered receivership. FSLIC has produced "all non-privileged litigation files in the possession of the Receiver, [but] it has not collected hundreds of litigation files from numerous outside counsel that may not be in the Receiver's possession." Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 15. FSLIC also has produced a list of the 218 pending suits [97] relating to Sunrise, but contends that litigation files from these suits would be irrelevant and unduly burdensome to produce. In addition, FSLIC points out that the requested documents are public records filed in courthouses around the country, and could be obtained just as easily by the moving defendants as by FSLIC. The moving defendants argue that these documents would be relevant to whether loans were prudently made, and to determining the value of collateral and actual losses suffered.

"[I]t is 'not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.'" *Petruska v. Johns–Manville*, 83 F.R.D. 32, 35 (E.D.Pa.1979) (citing 8 Wright & Miller, Federal Practice and Procedure, Civil § 2014, at 111). But this request for documents is exceptional. FSLIC is a party to 218 suits relating to Sunrise filed in courthouses all over the country, and is represented by a number of law firms hired as outside counsel. Requiring FSLIC to collect litigation files from all of the firms for all 218 actions would be extremely burdensome. Since the moving defendants may obtain these documents just as easily as FSLIC, they should be required to weigh the expense and burden of obtaining them against their possible relevance. As a result, I will not

---

**94.** *See* Defendants' Opening Brief in Support of Their Motions to Compel, at 31–33; Defendants' Reply Brief in Support of Their Motions to Compel, at 9, n. 8.

**95.** FSLIC correctly argues that this Court's Orders of July 29, 1987 (dismissing counterclaims and certain affirmative defenses of Blank Rome, at 12–15; dismissing certain affirmative defenses of the Outside Directors, at 3–6) removed from this litigation claims of contributory negligence, failure to warn and failure to mitigate damages against FSLIC. And although a determination at this time as to the appropriate measure of damages may be premature, documents relating to on-going tentative work-out negotiations are irrelevant to any conceivable measure of damages.

**96.** I also will exercise the power of the U.S. District Court for the Northern District of Georgia under § 1407(b) to compel FADA to produce a representative sample of the subpoenaed work-out documents for review by the Special Master, who may, of course, order supplementation of this or any other sample required herein.

**97.** 218 suits were pending as of May 25, 1988, when FSLIC filed its Opposition Memo. Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 32.

require FSLIC to produce the post-receivership litigation documents.

The third group of documents sought by the moving defendants were generated in the pre-receivership examination, regulation and supervision of Sunrise by FSLIC and the Federal Home Loan Bank Board. FSLIC has produced documents exchanged by FHLB–A with Sunrise, but has withheld all internal agency memoranda and work papers never shown to Sunrise. FSLIC claims that these documents are irrelevant because they relate solely to governmental supervision and regulation of Sunrise.[98] The moving defendants argue that these documents are highly relevant because they are unique, contemporaneous observations regarding the condition and demise of Sunrise.

Although the discoverability of these documents under F.R.C.P.Rule 26(b)(1) may well be the type of "legal issue" I intended to decide when I issued *In re Sunrise Securities Litigation*, 124 F.R.D. at 100–101 (regarding appointment of a Special Master), I find that this particular question is difficult to decide in the abstract. Because examination of these documents will assist in determining their relevance, I will order that a representative sample of these documents be submitted[99] to the Special Master for review and decision as to production.

Finally, I accept the representations of FSLIC's counsel regarding the moving defendants' request for sanctions, and that request will be denied.

### XIV. *FSLIC—Attorney Client Privilege and Work Product Loan Work–Out Documents*

Defendants Kenneth Howard, Koushel and Gruher seek documents relating to Sunrise's and FSLIC Receiver's attempts to collect, renegotiate, sell or liquidate the specific loans which FSLIC alleges they mishandled.[100] FSLIC has withheld these documents as protected by the attorney client privilege and/or work product protection. The moving defendants do not argue that the documents are not privileged or work product, but contend that any privileges must yield because the documents contain information directly at issue and are critical to this litigation. In particular, they argue that the documents will "help shed light on how a loan was made, why a loan was made, the performance of a loan, the factual basis for FSLIC's claim of negligence, the identities of persons having knowledge of the loans, and the basis of FSLIC's claim for damages."[101] FSLIC denies that these documents are critical to this case, that the defendants have substantial need for the documents, or that defendants cannot obtain the equivalent by other means.[102]

---

**98.** *See* Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 28–30. FSLIC states that it has not withheld any of these documents pursuant to a claim of governmental privilege, but claims that "[i]f it is determined by this Court that this material should be produced, any privileges will be raised at that time." Opposition of the FSLIC to the Motion to Compel Documents Filed by DHS and the Outside Directors, at 28, n. 32; *see also* at 33, n. 34. But Section V, Paragraph K of Pretrial Order No. 5 specifies that "On or before October 2, 1987, any party claiming privilege as a bar to producing documents shall assert such privilege with whatever particularity is required by applicable law." By failing to assert its claim of governmental privilege in time, FSLIC has waived the privilege.

**99.** I also will exercise the power of the U.S. District Court for the Northern District of Georgia under § 1407(b) to compel FHLB–A to produce a representative sample of these documents for review by the Special Master.

**100.** These documents are identified in: Opposition of the FSLIC to the Motion to Compel *Production of Documents Filed by Kenneth Howard and Koushel*, at 5–6; and Opposition of the FSLIC to the Motion to Compel Production of Documents Filed by Gruher, at 2.

**101.** Memorandum of Law in Support of Motion of Defendants Kenneth Howard and Koushel to Compel Production of Documents Against FSLIC, at 6.

**102.** FSLIC also argues that these motions should be denied for failure to comply with Local Rule 24(f). But from the accounts in their supporting memoranda, I am satisfied that the moving defendants made a good faith effort to resolve this dispute. *See* Memorandum of Law in Support of Motion of Defendants Kenneth Howard and Koushel to Compel Production of Documents Against FSLIC, at 2–3; Memorandum of Law in Support of Gruher's Motion to Compel Production of Documents Against FSLIC, at 2–3;

The moving defendants argue that the attorney client privileged loan work out documents must be produced under *Leucadia, Inc. v. Reliance Insurance Co.*, 101 F.R.D. 674, 679 (S.D.N.Y.1983), which held that "[e]ven where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure." The *Leucadia* Court held that the plaintiff had to produce an attorney client privileged document upon which it appeared the plaintiff had to rely to prove an element of its case. 101 F.R.D. at 679. It is conceivable that FSLIC may have to rely on some of the withheld documents to prove an element of its case against Kenneth Howard, Koushel and Gruher, but it is impossible to determine if this is the case without a review of the individual documents. Therefore, I will ask the Special Master to review the attorney client privilege documents and to conduct such further fact finding as he deems necessary; the Special Master will order production of all privileged documents on which FSLIC will have to rely to prove an element of its case.

For the documents FSLIC has withheld under claims of work product protection, the moving defendants argue that the at issue exception applies.[103] As with the Blank Rome work product documents, I will ask the Special Master to review these documents and to order production of those which contain information directly at issue in this litigation.

## XV. *FSLIC—Motions to Compel Answers to Interrogatories*

Defendants Kenneth Howard, Koushel, Hyman and Devaney have moved to compel FSLIC to answer interrogatories concerning loans or transactions with which FSLIC alleges Kenneth Howard and Koushel were involved. The interrogatories asked FSLIC to identify by name, borrower, loan number, amount and present status each loan with which FSLIC alleges Kenneth Howard and Koushel were involved, all documents related to the loans, and to describe Kenneth Howard and Koushel's alleged involvement, responsibility or role regarding each loan. FSLIC did not identify the present status of loans or describe the defendants' alleged involvement in its answer. In addition, in lieu of producing documents, FSLIC directed the moving defendants to "loan records, minutes of loan committee meetings and other Sunrise business records previously produced."

FSLIC argues that the unanswered portions of defendants' interrogatories violate Section V, Paragraph M of Pretrial Order No. 5, which provides that "[a]ll contention[104] and damage calculation interrogatories shall be deferred until further scheduling order of the Court." I find FSLIC's position that the unanswered portions of the interrogatories violate Pretrial Order No. 5 to be reasonable. The question arises, however, whether such interrogatories might nevertheless be appropriate at the present time. I therefore will not compel FSLIC to answer the contested portions of the interrogatories, but will request submissions by counsel concerning when contention and damage calculation interrogatories may be asked.

FSLIC argues that by directing the moving defendants to previously produced Sunrise business records, it has complied fully with the requirements of F.R.C.P.Rule 33(c).[105] Although I find that it was appro-

---

Reply Memorandum of Kenneth Howard and Koushel, at 1–5.

**103.** *See* discussion *supra* in Section I.

**104.** Contention interrogatories ask a party "to indicate *what* it contends," "*whether* it makes some specified contention," "to state all the *facts* on which it *bases* some specified contention," "to state all the *evidence* on which it *bases* some specified contention," "to take a position, and then to explain or defend that position, with respect to *how the law applies to facts*," or "to

spell out the *legal basis* for, or theory behind, some specified contention." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332 (N.D.Cal.1985).

**105.** Rule 33(c) provides: "Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof and the burden of deriving or ascertaining the answer is substan-

priate for FSLIC to answer the moving defendants' interrogatories by reference to business records under Rule 33(c), it is not clear from the record before this Court that FSLIC has specified documents with sufficient detail. FSLIC has not identified individual documents, but claims that its response is sufficiently specific because:

FSLIC has identified by name and number each loan with which the defendants were associated. FSLIC has also provided a detailed index by file, and, in some instances, by document of all the documents produced to the defendants' depository. This index clearly identifies which documents relate to the loans at issue in the litigation against the moving defendants.

Opposition of the FSLIC to the Motion to Compel Answers to Interrogatories, at 4 (footnotes omitted).

But the parties have not provided this Court with a copy of FSLIC's "detailed index," or any information about the size of the files to which FSLIC refers. I therefore will order FSLIC and the moving defendants to submit to the Special Master a copy of FSLIC's index and information about the number of documents contained in the files to which FSLIC has referred the moving defendants. I will ask the Special Master to determine, based on these materials, whether FSLIC's loan identification and index provide "sufficient detail to permit the interrogating part[ies] to locate and to identify, as readily as can [FSLIC], the records from which the answer may be ascertained." If the Special Master determines that FSLIC's response does not provide sufficient detail, he may order FSLIC to provide such further information, description or production as he deems appropriate.

### ORDER

AND NOW, this 31st day of May, 1989, upon consideration of: the motions of cer-

tain defendants and FSLIC to compel production of documents against Blank Rome and Foxman; the motion of Fitzgerald to compel discovery against Blank Rome; the motions of certain defendants to compel production of documents against FSLIC and for sanctions; the motion of Kenneth Howard, Koushel, Hyman and Devaney to Compel Answers to Interrogatories against FSLIC; the motions of certain defendants to enforce subpoenas served on Beach, AmeriFirst, FADA and FHLB–A; the motions of FSLIC to compel production of documents against Foxman, Treadwell, Gitomer, William Frame, Devaney, Gruher, Robert Jacoby, Hyman, Taber, Keiser, Jacobs, Logsdon, Siemon, Greenberg, Lytal, Simonson, and Felps; the motions of FSLIC and the outside directors to compel production of documents against DHS; and the motion of Robert Jacoby to compel production of documents against Taber; and of the supporting and opposing memoranda, it is hereby ORDERED that:

1. The following parties are compelled to produce the documents specified in the designated pages of the attached Memorandum. Except as otherwise noted, any documents listed in this section which are also listed in # 2 below need not be produced; their disposition is controlled by # 2. Production is to be in accordance with the provisions of Pretrial Order No. 5, Section V, Paragraph D, except as otherwise noted:

#### A. Blank Rome

i. Work product documents turned over to FSLIC (pp. 562–566);

ii. Documents withheld under attorney client privilege asserted on behalf of the JFGD joint venture or Blank Rome (pp. 571–572);

iii. Joint defense privilege documents (pp. 572–574);

---

tially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to

make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

iv. Grand jury privilege documents (pp. 574–575);

v. All documents requested by Fitzgerald, except for: BPZ1006149, BSX0010310, BSX0010316, and BPX7001353 (pp. 576–577). These documents are not to be produced in accordance with Pretrial Order No. 5, but are to be produced to Fitzgerald alone. These documents are to be produced to Fitzgerald regardless of whether they are listed in #2 below;

B. Foxman, Treadwell, Gitomer

i. Any internal Blank Rome documents or documents created or amassed during association with or representation of Sunrise which were turned over to FSLIC (pp. 562–566), unless withheld under individual claims of attorney client privilege (pp. 583–584);

C. Jacoby, Frame, Gitomer, Devaney

i. JFGD joint venture documents (pp. 572–574);

D. Foxman, Treadwell, Gitomer, Gruher, Hyman, Frame, Felps, Keiser, Jacobs, Logsdon, Siemon, Greenberg, Lytal

i. Financial information regarding income derived from Sunrise (pp. 577–579);

E. William Frame

i. Documents referring or relating to both Ron Frame and Sunrise (p. 581).

2. The following parties are compelled to produce the specified documents to the Special Master for review as explained in the designated pages of the attached Memorandum:

A. Blank Rome

i. Work product documents not turned over to FSLIC (pp. 566–569);

ii. Attorney client privilege documents withheld on behalf of Fitzgerald, Bibi Jacoby, Slosberg, Grisby, Robert Jacoby, William Frame, Devaney or Gitomer (pp. 569–572);

iii. Documents categorized by Blank Rome as "Post–Suit Documents Where Blank Rome Is Acting As Its Own Counsel" or "Post–Suit Documents Where Blank Rome Is Relying On Outside Counsel" (p. 572, n. 34);

iv. Documents created before the incorporation of Sunrise or after Blank Rome turned over its files to successor counsel (pp. 575–576);

B. Foxman, Treadwell and Gitomer

i. Internal Blank Rome documents or documents created or amassed during association with or representation of Sunrise which were not turned over to FSLIC (p. 562, n. 3; pp. 566–569), unless they have been withheld under individual claims of attorney client privilege (pp. 583–584);

C. William Frame

i. Documents referring or relating to Ron Frame which do not refer or relate to Sunrise (p. 581);

ii. Document FRM 4564–4751 (p. 581);

D. Robert Jacoby

i. Documents relating to Crusader Savings & Loan (pp. 581–582);

E. FSLIC

i. A representative sample of on-going work out documents (pp. 584–588) (*see also infra*, 3.A.ii.);

ii. A representative sample of pre-receivership internal agency memoranda and work papers (p. 589) (*see also infra*, 3.C.i.);

iii. Attorney client privilege and work product loan work-out documents (pp. 589–590).

3. Under 28 U.S.C. § 1407(b), the following non-parties are compelled to produce the specified documents within the Districts in which they are situated. The defendants who moved to enforce the subpoenas are encouraged to agree with the non-parties to an appropriate procedure for copying and review of the specified documents. The Special Master is asked to

assist in this effort (*see* attached Memorandum, pp. 585–586):

A. FADA

i. Subpoenaed documents generated on or after January 1, 1987 which do not concern on-going negotiations (p. 586);

ii. A representative sample of on-going work out documents, for review by the Special Master (pp. 584–588);

B. Beach

i. Post-receivership loan servicing documents (pp. 586–587);

C. FHLB–A

i. A representative sample of pre-receivership internal agency memoranda and work papers, for review by the Special Master (p. 589).

4. Counsel for FSLIC, Kenneth Howard, Koushel, Hyman and Devaney are directed to confer and to submit jointly to the Special Master, within a reasonable time, a copy of FSLIC's document index and information concerning the number of documents contained in the files discussed in pp. 590–591 of the attached Memorandum.

5. The Special Master shall have the rights, powers, and duties as provided in F.R.C.P. Rule 53 and may adopt such procedures as are not inconsistent with that Rule or with this or other Orders of the court. In particular, for the groups of documents specified *supra* in 2.E.i., 2.E.ii., 3.A.ii. and 3.C.i., the Special Master shall have power to request any additional documents he wishes to review in making his determinations. The Special Master shall make findings of fact and conclusions of law with respect to the matters referred to him in this Order and report expeditiously to the Court pursuant to Rule 53(e) as applicable in non-jury actions. Unless directed by the Court or believed advisable by the Master, the report shall not be accompanied by a transcript of the proceedings, the evidence, or the exhibits. Such parts of the report, if any, as may be confidential shall be filed under seal pending further Order of the Court.

Compensation at rates mutually agreeable to the Special Master and the parties shall be paid to the Special Master on a periodic basis by the parties, together with reimbursement for reasonable expenses incurred by the Special Master. The Special Master may employ other persons to provide clerical and secretarial assistance; such persons shall be under the supervision and control of the Special Master, who shall take appropriate action to insure that such persons preserve the confidentiality of matters submitted to the Special Master for review. Final allocation of these amounts shall be subject to taxation as costs at the conclusion of the case at the discretion of the Court.

6. Counsel for FSLIC, the Outside Directors and DHS are directed to confer and submit to this Court within a reasonable time a proposed amendment to the Protective Order in accordance with pp. 579–580 of the attached Memorandum.

7. Counsel are invited to submit, within a reasonable time, suggestions concerning when it would be appropriate to lift the ban set by Section V, Paragraph M of Pretrial Order No. 5 on contention and damage calculation interrogatories, as discussed in p. 590 of the attached Memorandum.

8. The motion of certain defendants for sanctions against FSLIC, discussed in pp. 585 and 589 of the attached Memorandum, is DENIED.

9. In all other respects, said motions are DENIED.

## MEMORANDUM

### ON MOTION FOR PARTIAL RECONSIDERATION

Defendant Blank, Rome, Comisky & McCauley ("Blank Rome") has moved for partial reconsideration of this Court's Memorandum and Order of May 31, 1989 ("May 31 Memorandum") regarding motions to compel first phase document production. Blank Rome seeks reconsideration of those portions of the May 31 Memorandum re-

quiring Blank Rome to produce documents withheld under either the attorney client privilege asserted on behalf of Blank Rome as both attorney and client or a grand jury privilege. Defendant Edward Fitzgerald joins that portion of Blank Rome's motion concerning attorney client privilege documents. The parties originally seeking to compel production of these documents included: the former outside directors of Sunrise, Deloitte Haskins & Sells, FSLIC, Caldwell C. Robinson, Frederic Gruher, Kenneth R. Howard, Laddie D. Howard, J. Randolph Black and Curtis Walker. *See* May 31 Memorandum, at 562–563.

## I. *Attorney Client Privilege Documents*

At present, Blank Rome withholds 31 documents[1] on the basis that they reflect requests for legal advice made by Blank Rome to Blank Rome attorneys or outside counsel. Blank Rome has divided these documents into four categories: (1) "post-suit documents where Blank, Rome is acting as its own counsel";[2] (2) "post-suit documents where Blank, Rome is relying on outside counsel";[3] (3) "documents concerning Blank, Rome's continued representation of savings & loan associations generally";[4] and (4) "documents concerning Blank, Rome's representation of Sunrise."[5] Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit F. In the May 31 Memorandum, I referred the documents in categories (1) and (2) to the Special Master for review,[6] and held that the documents in categories (3) and (4) were not protected by the attorney client privilege. I rejected Blank Rome's contention that "a law firm may consult its own attorneys as house counsel to secure legal advice in connection with or related to the firm's representation of a client, and as a result obtain the protection of the attorney client privilege on the basis that it is its own client." May 31 Memorandum, at 572.

In support of its motion for reconsideration, Blank Rome argues that the attorney client relationship it claims here is analogous to that between a corporation and its in house corporate counsel. Communica-

1. In its original memorandum in opposition to the moving defendants' amended motion, Blank Rome listed 32 "documents as to which Blank, Rome has asserted attorney/client privilege with Blank, Rome as client." Response of Blank Rome to Certain Defendants' Amended Motion, Exhibit F. In its reply memorandum concerning the present motion and in oral argument, Blank Rome withdrew its claim of attorney client privilege for one of these documents, BPX0015313. Reply of Blank Rome to Response of Certain Defendants to Blank Rome's Motion for Partial Reconsideration, at 562, n. 3.

2. This group includes 12 documents: BPX0010943–0947; BPX0011297–1331; BPX6002369–2371; BPX6002376; BPX6002668; BPX6006532; BPX6012980–2991; BPX7000122; BPX7000711; BPX7000712; BPX7000714; and BPX7000718–0720.

3. This group includes 16 documents: BPX0011116; BPX6002506; BPX6002507–2508; BPX6002509–2510; BPX6002511–2512; BPX6002513; BPX6002514; BPX6002669–2670; BPX7000594; BPX7000600–0649; BPX7000710; BPX7000713; BSX0000314; BSX0000428; BSX0000429–0431; and BSX0000432.

4. This category includes 2 documents: BPX7519657–9683; and BPX7519706–9711.

5. This category now contains only 1 document: BPX6002753–2766. *See supra,* n. 1.

6. In their reply memorandum in support of their motion to compel, the moving defendants stated that

[they] have never sought documents which constitute or reflect communications with Blank Rome's outside counsel. In addition, Blank Rome need not disclose internal communications in which it was representing itself in the shareholders' case, at least insofar as those documents were created after separate counsel was obtained for Sunrise.

Moving defendants do not agree, however, that all the documents listed in Exhibit F to Blank Rome's Brief under the headings "Post Suit Documents when Blank, Rome is Acting as its Own Counsel" or "Post Suit Documents When Blank, Rome is Relying on Outside Counsel" fall within these categories. It is not at all clear whether the subject matter of these documents was the shareholder suit, nor is it clear that the documents provide legal, not business, advice.

Reply Memorandum of Certain Defendants to Response of Blank Rome, at 28–29, n. 26. Accordingly, in the May 31 Memorandum I asked the Special Master to review the 28 documents in categories (1) and (2) "and to order production of any non-privileged documents." May 31 Memorandum, at 572, n. 34.

tions by corporate directors, officers or employees to in house corporate counsel for the purpose of obtaining legal advice for the corporation may be protected by the attorney client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 389–397, 101 S.Ct. 677, 682–86, 66 L.Ed.2d 584 (1981). According to Blank Rome, the withheld documents refer or relate to communications made by Blank Rome attorneys to other Blank Rome attorneys seeking legal advice on behalf of the firm. Blank Rome contends that to deny the protection of the attorney client privilege to these documents "would effectively penalize law firms by holding them to a standard which has no counterpart in any other sphere of the business or professional community." Memorandum in Support of Blank Rome's Motion for Partial Reconsideration, at 6.

■■■ Blank Rome has not cited a case in which a court has held that the attorney client privilege applies to communications between attorneys within a law firm on the basis that the consulted attorneys acted as house counsel giving legal advice to the firm. Nevertheless, I am now persuaded that it is possible in some instances for a law firm, like other business or professional associations, to receive the benefit of the attorney client privilege when seeking legal advice from in house counsel. Although, as discussed *infra,* a law firm's consultation with in house counsel may cause problems of conflicting fiduciary duties which seldom arise in corporations or other professional associations, on reflection, I am not willing to hold that a law firm may never make privileged communications with in house counsel.[7]

Like any other person or entity seeking to assert the privilege, Blank Rome must

establish that the documents meet the attorney client privilege test set forth in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–359 (D.Mass. 1950) and adopted by the Court of Appeals for the Third Circuit in *In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3d Cir. 1979):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort: and (4) the privilege has been (a) claimed and (b) not waived by the client.

In addition, a law firm's consultation with in house counsel may cause special problems which seldom arise when other businesses or professional organizations consult their in house counsel. A law firm's representation of a client, and its ability to meet its ethical and fiduciary obligations to that client, may be affected by its representation of another client, even if the second client is the law firm itself. So, for example, when a law firm seeks legal advice from its in house counsel, the law firm's representation of itself (through in house counsel) might be directly adverse to, or materially limit, the law firm's representation of another client, thus creating a prohibited conflict of interest.[8] The ques-

---

**7.** The moving parties do not dispute that a law firm may make privileged communications with in house counsel under some circumstances. Memorandum of Certain Defendants in Opposition to Blank Rome's Motion for Partial Reconsideration, at 5.

**8.** The moving parties and Blank Rome agree that the Pennsylvania Rules of Professional Conduct determine the ethical obligations of Blank Rome attorneys consulted in communications reflected in the documents in question.

Memorandum of Certain Defendants in Opposition to Blank Rome's Motion for Reconsideration, at 6; Reply of Blank Rome to Response of Certain Defendants, at 7–8. Pennsylvania Rule of Professional Conduct 1.7 states the general rule governing conflicts of interest:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

tion, then, is whether the interest in protecting clients who may be harmed by such a conflict affects the applicability of the attorney client privilege to a law firm's communications with in house counsel seeking legal advice for the firm.

In *Valente v. PepsiCo,* 68 F.R.D. 361 (D.Del.1975), the Court addressed the issue of how conflicting fiduciary duties owed by the attorney affect a client's attorney client privilege for communications with its attorney.[9] The plaintiffs in *Valente* were minority shareholders of Wilson Sporting Goods Co. seeking damages from PepsiCo, which was the majority shareholder in Wilson during the time in question, for the merger of Wilson into PepsiCo. The minority shareholders sought documents from PepsiCo for which PepsiCo claimed the attorney client privilege. These documents included: a memorandum to PepsiCo officers from PepsiCo's in house counsel, Peter

DeLuca, who also sat on the Wilson board of directors; and a memorandum to PepsiCo from the law firm acting as PepsiCo's outside counsel, one of whose partners was a member of the Wilson board of directors.

The *Valente* Court held that the conflicting fiduciary duties owed by DeLuca to Wilson and PepsiCo prevented assertion of the attorney client privilege against Wilson:

> [DeLuca] owed separate fiduciary obligations to two separate entities and their interests. He could not subordinate the fiduciary obligation which he owed to Wilson and the minority shareholders of Wilson to those of his client PepsiCo.... PepsiCo cannot now claim a privilege *as to his communications with PepsiCo officials concerning the interests of the Wilson shareholders.* 68 F.R.D. at 368 (emphasis added).

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Pennsylvania Rule of Professional Conduct 1.10 states the general rule for imputed disqualification for attorneys practicing with a firm:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

**9.** Courts occasionally have addressed the problem presented by persons or entities, other than law firms, who seek to assert the attorney client privilege where their own interests may conflict with their fiduciary duties. In the seminal case of *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), a corporation (through its counsel) asserted the privilege to withhold information from its stockholders in a stockholders' suit against the corporation. The Court of Appeals for the Fifth Circuit stated that corporate "management has duties which run to the bene-

fit ultimately of the stockholders.... There may be many situations in which the corporate entity or its management, or both, have interests adverse to those of some or all stockholders. But when all is said and done management is not managing for itself." Accordingly, the Court held that:

> where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance. 430 F.2d at 1103–1104.

The Court listed several indicia of good cause, many of which concerned the credibility of stockholders' claims that the corporation failed to meet its fiduciary duties to the stockholders by favoring management's interests.

Courts have applied the *Garner* good cause test where beneficiaries have claimed breaches of fiduciary duties by corporate directors and officers (*Panter v. Marshall Field,* 80 F.R.D. 718, 722–723 (N.D.Ill.1978) (alleged breaches of duties to shareholders)), majority shareholders (*In re Transocean Tender Offer Securities Litigation,* 78 F.R.D. 692, 694–697 (N.D.Ill.1978) (alleged breaches of duties to minority shareholders)), a bank (*Quintel Corp. v. Citibank, N.A.,* 567 F.Supp. 1357, 1360–1364 (S.D.N.Y.1983) (alleged breaches of duties to corporation for which bank acted as fiduciary in a land acquisition transaction)) and a union (*Aquainaga v. John Morrell & Co.,* 112 F.R.D. 671, 679–681 (D.Kan.1986) (alleged breaches of duties to union members)).

Likewise, the Court held that PepsiCo's outside counsel had conflicting fiduciary duties, and could not assert the privilege against Wilson for a document addressed to PepsiCo "concerning the various recommended forms of the merger." 68 F.R.D. at 369.[10]

■ Applied to the situation presented here, the reasoning of *Valente* would dictate that a law firm's communication with in house counsel is not protected by the attorney client privilege if the communication implicates or creates a conflict between the law firm's fiduciary duties to itself and its duties to the client seeking to discover the communication. Because I find that the *Valente* Court's well-reasoned analysis accomodates the interests of both the fiduciary or attorney and the benefi-

ciary or client, I will adopt it as the controlling rule in this case.[11] The attorney client privilege therefore will protect only those otherwise privileged documents withheld by Blank Rome which do not contain communications or legal advice in which Blank Rome's representation of itself violated Rule 1.7 with respect to a Blank Rome client seeking the document.[12] As a result, examination of individual documents will be necessary.[13]

In short, determination of whether the documents in question are protected by the attorney client privilege requires application of two tests. First, the document must meet the requirements set forth in *United Shoe*. Second, the document must not contain communications or legal advice

---

**10.** The Court also required production of four other PepsiCo documents "directly concerned with the duties which the controlling shareholder and its controlled corporation owed to the minority" on the basis that PepsiCo had interests conflicting with its fiduciary duties to Wilson. The Court's discussion implicitly applied the principles enunciated in *Garner:*

> Where the fiduciary has conflicting interests of its own, to allow the attorney-client privilege to block access to the information and bases of its decisions as to the persons to whom the obligation is owed would allow the perpetration of frauds. A fiduciary owes the obligation to his beneficiaries to go about his duties without obscuring his reasons from the legitimate inquiries of the beneficiaries.
>
> There are, of course, limits on such an obligation. Were the claim here one made in bad faith, or one where the interests of the great majority of the beneficiaries would be better served by the privilege, the case would be different indeed. Similarly, if the information sought were a trade secret, or otherwise covered by other public policies which would give added weight to a need for secrecy, the obligations of the fiduciary might have entirely different circumstances, But those situations are not this situation. *The power of courts to determine such matters individually, in light of their facts,* will adequately protect the interest of both fiduciaries and beneficiaries. 68 F.R.D. at 369–370. (emphasis added)

**11.** In its opposition brief, Blank Rome did not dispute that the *Valente* analysis applies when conflicts arise. Rather, Blank Rome contended that *Valente* should apply only in those cases where a conflict is found, and should not be construed as announcing a blanket prohibition on assertion of the attorney client privilege for a law firm's communications with in house coun-

sel: "Although one can envision a scenario in which the attorney does use a fiduciary relationship to his client's detriment and to his own advantage, such situations should be determined on a case by case basis." Response of Blank Rome to Certain Defendants' Amended Motion, at 24–25. As discussed *infra,* just such "case by case" determinations about conflicts will be made here.

**12.** This particular formulation of the rule for when *conflicting fiduciary duties* prevents assertion of the attorney client privilege derives from the fact that Blank Rome's conflict, if any, arose from the firm's simultaneous representation of both itself and Sunrise. As noted *supra,* Pennsylvania Rule of Professional Responsibility 1.7 provides that an attorney's representation of a client presents an impermissible conflict of interests if it is "directly adverse to" or "materially limits" representation of another client, absent disclosure to and consent by the client.

> If, for example, the documents sought were communications by Blank Rome to its own outside counsel, Rule 1.7 would not apply since Blank Rome would be represented by outside counsel, not by Blank Rome itself. Since the question is not before me, I express no opinion as to whether *Garner* and its progeny would require a law firm to disclose to a client communications between the law firm and its outside counsel relating to the law firm's representation of that client.

**13.** *Valente* does not suggest that a blanket waiver of attorney client privilege occurs whenever the possibility of conflicting fiduciary duties arises. Rather, the Court determined that the privilege did not apply because in the particular documents in question, a party with conflicting fiduciary duties subordinated one beneficiary's interest to the other's. *See* 68 F.R.D. at 368–370.

in which Blank Rome's representation of itself violated Rule 1.7 with respect to a Blank Rome client seeking the document.

I have examined *in camera* the three withheld documents which were not referred to the Special Master for review in the May 31 Memorandum. I find that the attorney client privilege does not apply to two of these documents, documents BPX7519657–9683 and BPX7519706–9711, because they concern firm business matters and, at most, relate to a request for business advice, not legal advice.[14] *See United Shoe*, 89 F.Supp. at 359; *Barr Marine Products Co., Inc. v. Borg–Warner*, 84 F.R.D. 631, 638 (E.D.Pa.1979) (distinguishing between unprotected communications regarding business advice and protected communications regarding legal advice). I find that the third document, BPX6002753–2766, is protected by the attorney client privilege because it satisfies the *United Shoe* test and does not contain communications or legal advice in which Blank Rome's representation of itself violated Rule 1.7.

I will refer the 28 withheld documents which Blank Rome refers to as "post-suit documents where Blank, Rome is acting as its own counsel" and "post-suit documents where Blank, Rome is relying on outside counsel" to the Special Master for review. Because the parties disagree on whether these documents are sought by the moving parties[15] as well as whether they are protected by the attorney client privilege, I will ask the Special Master to determine whether the documents meet three tests. First, the Special Master should determine whether the documents fall within the categories of documents not sought by the moving parties, i.e. whether the documents "constitute or reflect communications with Blank Rome's outside counsel" or are "internal communications in which [Blank Rome] was representing itself in the shareholders' case, at least insofar as those doc-

uments were created after separate counsel was obtained for Sunrise." The Special Master then should review any documents which do not fall within these categories (and which, therefore, are sought by the moving parties) to determine if they are protected by the attorney client privilege. As explained *supra*, the Special Master should determine whether the documents satisfy the *United Shoe* test, and whether they contain communications or legal advice in which Blank Rome's representation of itself violated Rule 1.7 with respect to a Blank Rome client seeking the document. I will ask the Special Master to report his findings to me in accordance with the May 31 Memorandum.

## II. *Grand Jury Privilege Documents*

On the basis of the common law policy of grand jury secrecy, Blank Rome has withheld 256 documents sought by the moving parties which relate to the Sunrise grand jury investigation. The withheld documents include indices and documents produced to the grand jury, memoranda and correspondence among Blank Rome attorneys, correspondence between Blank Rome and counsel for various Sunrise officers, correspondence between Blank Rome and the Assistant U.S. Attorney in charge of the investigation, and motions. The moving parties do not seek grand jury transcripts, orders of the grand jury supervisory court, subpoenas issued by the grand jury or documents placed under seal by Order of the U.S. District Court for the Southern District of Florida. Memorandum in Support of Certain Defendants' Amended Motion to Compel Against Blank Rome and Foxman, at 33, n. 24; Reply Memorandum of Certain Defendants to Blank Rome's Response, at 35, n. 31.

In the May 31 Memorandum, I held that Blank Rome was under no obligation to withhold these documents under Rule 6(e) of the Federal Rules of Criminal Proce-

---

**14.** Because Blank Rome also has asserted work product protection for both of these documents (*see* Response Of Blank Rome to Certain Defendants' Amended Motion, Exhibit A ("Revised Blank Rome Privilege List")), I will order Blank Rome to make such further disposition of the documents as is required by the May 31 Memorandum (Memorandum, pp. 562–569; Order 1.A.i or 2.A.i (as applicable)).

**15.** *See supra*, n. 6.

dure, and that Rule 6(e)(2) "explicitly prevents imposition of an obligation of secrecy on any person except in accordance with the Rule." May 31 Memorandum, at 574. I rejected Blank Rome's argument that a distinction should be drawn between imposing an obligation of secrecy on a witness and permitting a witness to invoke a privilege against compelled disclosure under *William Iselin & Co., Inc. v. Ideal Carpets, Inc.*, 510 F.Supp. 343 (N.D.Ga.1980) and *State of Texas v. United States Steel Corp.*, 546 F.2d 626 (5th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977):

> In effect, Blank Rome argues for adoption of a "grand jury privilege," purportedly intended to protect the secrecy of grand jury proceedings, which could be waived or asserted by a party at will without regard for the secrecy of grand jury proceedings. But adoption of such a privilege clearly would not protect the secrecy of grand jury proceedings, and would extend the holdings of *William Iselin* and *State of Texas* far beyond protection of grand jury testimony or documents. May 31 Memorandum, at 575.

In support of its motion for reconsideration, Blank Rome argues that *William Iselin* and *State of Texas* provide the basis for its assertion of a privilege based on the common law policy of grand jury secrecy existing outside of Rule 6(e). Blank Rome contends that adoption of a grand jury privilege would promote one of the traditionally cited reasons for the policy of grand jury secrecy: "the desire to create a sanctuary, inviolate to any intrusion except on proof of some special and overriding need, where a witness may testify, free and unfettered by fear of retaliation." *State of Texas*, 546 F.2d at 629.[16]

In *William Iselin*, a person who had testified before a grand jury was deposed by defendants in a related civil proceeding and was asked to reveal "all of the questions asked of him by the grand jury," "all of his testimony before the grand jury," "all witnesses he knew who testified before the grand jury," to identify "any one who may have accompanied him to the grand jury proceedings" and "all documents brought with him to the grand jury investigation," and "to generally testify to all matters concerning the grand jury proceedings." 510 F.Supp. at 344. The Court reasoned that "while Rule 6(e) imposes no condition of secrecy on witnesses, it does not lift the general veil of secrecy which covers grand jury proceedings." 510 F.Supp. at 346. The Court noted that this general veil of secrecy serves to encourage witnesses to testify without fear of retaliation, and held:

> When the witness chooses to disclose his testimony, this ground of grand jury secrecy remains unaffected. However, when another party is attempting to compel disclosure, the policy which requires secrecy must be balanced against the policy requiring that there be full disclosure of all available evidence in order that the ends of justice may be served. The decision as to whether or not to order disclosure of grand jury testimony is one committed to the sound discretion

---

**16.** Blank Rome apparently does not contend (nor could it, in my opinion) that adoption of a grand jury privilege would promote any of the other commonly cited reasons for the policy of grand jury secrecy: "[t]o prevent the escape of those whose indictment may be contemplated"; "to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors"; "to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it"; and "to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–682, n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958).

Blank Rome does suggest that adoption of a grand jury privilege would protect innocent people who are targets before but are exonerated by a grand jury. Memorandum in Support of Motion for Partial Reconsideration, at 10. But because the grand jury privilege sought by Blank Rome could be asserted or waived at the sole discretion of the person possessing the grand jury information, it would only provide protection to those innocent parties whom the person possessing the grand jury information wished to protect.

of the trial court. Thus, a grand jury witness is protected against disclosure of his testimony by a district court's power to prevent such disclosure. 510 F.Supp. at 346 (citations omitted).

According to the Court, the defendants were required to establish particularized need to discover the requested information. 510 F.Supp. at 346–347.

In *State of Texas,* Texas requested the defendants in a civil antitrust suit to produce "grand jury subpoenas, schedules, notices, summonses or other documents requesting the attendance of any person and the production of any documents and transcripts of testimony before the federal grand jury" in a related criminal proceeding. 546 F.2d at 628. The defendants previously had obtained transcripts of their employees' grand jury testimony under Fed.R.Crim.P. 16(a)(1)(A). Defendants had agreed not to share the transcripts with one another, and refused to surrender the requested documents and transcripts to Texas. Before the Court of Appeals for the Fifth Circuit, Texas argued that production of the transcripts posed no threat to grand jury secrecy because the secrecy already had been breached by the transcript production under Rule 16(a)(1)(A). The Court stated, however, that the policy of encouraging witnesses to testify without fear of retaliation remains unaffected when the witness obtains his own transcript:

> The State concedes as much in admitting that, absent a showing of particularized need, it could not hope to obtain civil discovery from an individual witness merely because he had obtained the transcript of his own testimony. By this concession the State recognizes that requiring such disclosure would in some degree compromise the effectiveness of the grand jury.... We conclude that similar arguments justify the appellants' present reliance on this policy to protect them from discovery in the absence of a showing of particularized need. 546 F.2d at 630.

Neither *William Iselin* nor *State of Texas* explicitly recognize a common law

"grand jury privilege." To the extent that they implicitly do so, I decline to adopt their reasoning. Such a privilege, although purportedly recognized to protect grand jury secrecy, would promote at most only one of several policies underlying the tradition of grand jury secrecy.[17] Moreover, such a privilege would leave the decision whether to protect the secrecy of the grand jury to the sole discretion of the party asserting the privilege, regardless of the effect disclosure or nondisclosure might have on other persons who appeared before or were charged by the grand jury.

■ But the fundamental problem with a common law grand jury privilege for persons not under an obligation of secrecy under Fed.R.Crim.P.Rule 6(e)(2) is that a court's recognition of such a privilege would conflict with the Rule's specific provision that "[n]o obligation of secrecy may be imposed on any person except in accordance with this rule." For the purposes of this prohibition, Rule 6(e)(2) provides no basis for distinguishing between a self-imposed obligation of secrecy in the form of an asserted grand jury privilege and an obligation of secrecy imposed by a statute or court order.

Neither *William Iselin* nor *State of Texas* address the inherent conflict between recognition of a grand jury privilege and the explicit prohibition of Rule 6(e)(2). Indeed, in support of its assertion that "a grand jury witness is protected against disclosure of his testimony by a district court's power to prevent such disclosure," the *William Iselin* Court cites only *In re Brummit,* 608 F.2d 640 (5th Cir.1979), *cert. denied* 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980). 510 F.Supp. at 346. In *Brummit,* the Court of Appeals for the Fifth Circuit held that a person subpoenaed to testify before a grand jury could not refuse to testify on the grounds that leaks of his testimony might subject him to foreign prosecution because Rule 6(e) empowered the district court to prevent disclosure of his testimony. 608 F.2d at 642–643. Clearly, *Brummit* provides no basis for

17. *See supra,* n. 17.

concluding that a district court may recognize a common law grand jury privilege regardless of any conflict with Rule 6(e)(2).

In declining to recognize a common law grand jury privilege for persons not under an obligation of secrecy under Fed.R.Crim. P.Rule 6(e)(2), I am supported by two recent decisions of the Court of Appeals for the Eleventh Circuit concerning Fla.Stat. § 905.27,[18] the Florida statutory equivalent of Rule 6(e)(2).[19] Unlike Rule 6(e)(2), § 905.27 imposes an obligation of secrecy on witnesses and "any other person appearing before the grand jury." In *In re Grand Jury Proceedings*, 832 F.2d 554 (11th Cir.), *reh. denied* 835 F.2d 291 (1987), the Court nevertheless declined to derive from § 905.27 a Florida common law grand jury privilege for witnesses' testimony before a Florida grand jury. 832 F.2d at 559–560.[20] In *Smith v. Butterworth*, 866 F.2d 1318 (11th Cir.), *cert. granted*, — U.S. —, 110 S.Ct. 46, 107 L.Ed.2d 16 (1989), the Court declared that § 905.27 was unconstitutional to the extent it prevented disclosures by witnesses "who speak about their own testimony after the grand jury investigation is terminated." 866 F.2d at 1321. In so holding, the Court relied on Rule 6(e)(2) in concluding that

prohibition of disclosures by witnesses is not required to preserve the integrity of grand jury proceedings:

> While it is true that courts have long recognized the need for grand jury secrecy, the rule of secrecy has not always been extended to witnesses. Fed.R. Crim.P. 6(e), for example, which codifies the traditional rule of secrecy, does not impose an unqualified obligation of secrecy on witnesses. The advisory committee note explains that "[t]he seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice...." Fed.R.Crim.P. 6(e) advisory committee's note. The federal rule reflects a determination that the effectiveness of the grand jury function can be ensured absent application of the rule to witnesses. Although the federal rule is not binding on any state, it illustrates that Florida's goal of preserving the integrity of grand jury proceedings can be achieved without the imposition of a blanket prohibition on disclosure. 866 F.2d at 1320.[21]

█ I conclude that Rule 6(e)(2), which codifies the traditional policy of grand jury secrecy, defines the only circumstances under which a person can be held to an obli-

---

**18.** This statute provides, in relevant part:

"(1) A grand juror, state attorney, assistant state attorney, reporter, stenographer, interpreter, or any other person appearing before the grand jury shall not disclose the testimony of a witness examined before the grand jury or other evidence received by it except when required by a court to disclose the testimony for the purpose of:

(a) Ascertaining whether it is consistent with the testimony given by the witness before the court;

(b) Determining whether the witness is guilty of perjury; or

(c) Furthering justice."

**19.** Rule 6(e)(2) provides, in relevant part: "A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Rule 6(e)(3)(A)(ii) provides for disclosure to "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary

by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law."

**20.** The Court also rejected the claim of a grand jury privilege based on "the federal common law presumption of grand jury secrecy": "That presumption, which is codified in Fed.R.Crim.P. 6(e), relates to disclosure of federal grand jury records. It cannot be asserted in the form of a privilege by appellants, who seek to prevent disclosure of their *state* grand jury testimony." 832 F.2d at 560, n. 6.

**21.** Even if the Supreme Court were to reverse *Butterworth* and find that states may impose obligations of secrecy on grand jury witnesses after the grand jury investigation has terminated, such a decision would not affect my reasoning regarding a federal common law grand jury privilege. *Butterworth* is relevant to the present question only in that it recognizes Rule 6(e), which does not prohibit witnesses from disclosing grand jury matters, as defining the limits of the policy of grand jury secrecy under federal law.

gation of secrecy regarding grand jury matters. To the extent that *William Iselin* and *State of Texas* suggest that an obligation of secrecy may be invoked by a person outside the bounds of Rule 6(e)(2) at his or her sole discretion, i.e. in the form of a privilege, I decline to follow them; neither Court provides any basis for distinguishing the explicit mandate of Rule 6(e)(2) that no obligation of secrecy may be imposed on a person except in accordance with the Rule. I will order Blank Rome to produce the "grand jury privilege" documents.

### ORDER

AND NOW, this 17th day of November, 1989, upon consideration of the motion of Blank, Rome, Comisky & McCauley ("Blank Rome") for partial reconsideration of this Court's Memorandum and Order of May 31, 1989, and of the supporting and opposing memoranda, it is hereby ORDERED that said motion is GRANTED in part and DENIED in part:

1. Blank Rome will produce to the Special Master for review all documents withheld under the attorney client privilege asserted on behalf of Blank Rome as client described as "post-suit documents where Blank, Rome is acting as its own counsel" or "post-suit documents where Blank, Rome is relying on outside counsel." The Special Master is requested to review these documents in accordance with pp. 562–567 of the accompanying Memorandum. The Special Master is requested to report his findings to the Court in accordance with, and will have the rights, powers and duties delineated in, Section 5 of this Court's Order of May 31, 1989.

2. Blank Rome's assertion of the attorney client privilege for documents BPX7519657–9683 and BPX7519706–9711 is DENIED. Blank Rome will make such further disposition of these documents as is required by the Memorandum and Order of May 31, 1989 (Memorandum, pp. 562–569; Order, 1.A.i or 2.A.i, as applicable).

3. Blank Rome's assertion of the attorney client privilege for document BPX6002753–2766 is SUSTAINED.

4. Blank Rome's assertion of a grand jury privilege is DENIED. Blank Rome will produce to the Special Master for review any documents withheld on the basis of a grand jury privilege which are also encompassed by Sections 2.A.i., 2.A.ii., or 2.A.iv of this Court's Order of May 31, 1989; the Special Master is requested to review any such documents in accordance with the Memorandum and Order of May 31, 1989. Blank Rome will produce all documents withheld on the basis of a grand jury privilege which were ordered to be produced by the Memorandum and Order of May 31, 1989; such production is to be in accordance with the provisions of Pretrial Order No. 5, Section V, Paragraph D.